Pendleton Unemployment Compensation Case.

Keystone Mining Company, Appellant, *v.* Unemployment Compensation Board of Review.

Argued March 7, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Franklin B. Gelder*, with him *J. H. Oliver*, for appellant.

*William L. Hammond*, Special Deputy Attorney General, with him *Richard H. Wagner*, Associate Counsel and *T. McKeen Chidsey*, Attorney General, for appellee.

*Samuel Krimsly,* for intervenors.

OPINION BY RENO, J., July 20, 1950:

Keystone Mining Company, employer, appealed from a decision of the Unemployment Compensation Board of Review awarding compensation to Robert Pendleton (No. 29) and Alexander D. Alexander (No. 30). The separate appeals involved identical questions of law; were argued together; and will be decided in one opinion.

The records will be remitted for further hearing, and accordingly we state the board's version of the facts without committing this Court to its approval. Claimants had been employed in the bituminous coal industry for most of their lives, and were in appellant's employ for over 20 years. Pendleton is 68 years of age and Alexander is 64. Both left their employment on December 31, 1948, because their work was "too heavy." Pendleton testified that the heavy work had aggravated his hernia; Alexander that the wet and damp conditions prevailing in the mines had injured his health. They had requested lighter work but none was available. The board allowed compensation, holding that the effect of the work upon claimants' health constituted a good cause for leaving their employment, within the meaning of the Unemployment Compensation Law, §402(b), 43 P. S. §802. We have held that the physical condition of an employe *is* an important factor in determining the existence of good cause. *Filchock Unemployment Compensation Case,* 164 Pa. Superior Ct. 43, 63 A. 2d 355; *Miller Unemployment Compensation Case,* 158 Pa. Superior Ct. 570, 45 A. 2d 908.

The board also decided that claimants were "able to work and available for suitable work" within the meaning of §401(d), 43 P. S. §801, although there were no immediate opportunities for securing lighter work for which they were capable in the vicinity in which they lived. See *Sturdevant Unemployment Compensation*

*Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898. The evidence upon which this finding was rested will not now be reviewed.

The undisputed testimony is that immediately after ceasing work both claimants applied for pensions to which they were entitled as members of the United Mine Workers of America, and Pendleton also applied for old age assistance under the Social Security Act of Congress.[1] This is the pinch of the case, and yet the board gave it no consideration. It found no facts in respect to it, and its decision totally ignored the question. Appellant applied for a rehearing upon this ground, inter alia, but the board refused it out-of-hand, an administrative practice not to be commended, since the board had previously decided similar cases against other claimants.[2]

The effect of acceptance of industrial pensions upon an employe's claim for unemployment compensation has not hitherto occupied the attention of this Court,[3] and our research has not uncovered appellate expressions elsewhere on the point. On August 1, 1949 more than 11,000 plans for industrial pensions were in operation.[4]

---

[1] The record does not disclose the exact date when the applications for pensions were filed. At the hearings claimants testified that they were *then* receiving their pensions, but the dates when payments of pensions commenced are not stated. Payments may have been made as of the date of the applications but that fact has not been developed.

[2] The cases have not been made available to us, but we gather from the briefs that they denied compensation claims where claimants were receiving pensions under the United Mine Workers of America Health and Welfare Fund.

[3] In *Hall Unemployment Compensation Case,* 160 Pa. Superior Ct. 65, 49 A. 2d. 872, claimant's pension was only incidentally involved. The factual issue was whether or not she had been "laid off", and this Court decided only that the evidence supported the board's finding that she had separated from her employment voluntarily.

[4] Pension and Profit Sharing Service. (Prentice-Hall.) Supplement of August 1, 1949.

These plans, varying in detail while following a general pattern, will, more and more, call for administrative and judicial interpretation. It is probably too early to attempt formulation of guiding principles, and only provisional dicta may now be suggested.

It is safe to assert that pension payments are not wages within the meaning of the Law, §4(x), 43 P. S. §753, and that their receipt will not disqualify an employe who meets the other requirements of the Law. Nor are payments made by an employer to a pension fund regarded as wages. Law, §4(x)(2)(A). The purpose of the unemployment legislation is "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own": Law, §3, 43 P. S. §752. By it the legislature seeks to prevent "the spread of indigency", but an employe need not be indigent to secure the benefits provided by the Law. If he meets the requirements of the Law he is entitled to compensation even though he has other resources and from them receives income adequate for his needs; e. g., interest on savings accounts, mortgages, United States bonds, or rent for real estate owned by him. The purpose of a pension plan is "to pay additional compensation for services rendered in the past": *Kline v. State Employes' Retirement Board,* 353 Pa. 79, 85, 44 A. 2d 267. However it is not remuneration within §4(u), 43 P. S. §753, since the pensioner performs no service during the period covered by the pension payments.

There is another aspect to an industrial pension: its tendency to withdraw the recipient from the labor market. Indeed, at one time and possibly now, withdrawal of older men from the labor market formed an objective in the union's advocacy of pension plans.[5] If

---

[5] "In the depression years of the 1930's, however, unions adopted a contrary view. Unions then favored compulsory retirement of older workers in order to make more jobs available to new members

the condition of a pension is that the recipient shall permanently retire from all gainful labor he is certainly not available for suitable work, and is disqualified for unemployment compensation. If the condition is that he shall retire from a specified industry, to that extent his availability becomes restricted, and it is an open question as to how far a worker in covered employment may circumscribe his availability for work and still remain qualified for compensation. Even if a pensioner is permitted, under the terms of his pension, to work in other industries by waiving pension payments during such service, his potential availability is reduced by the amount of his pension. That is, a pensioner who receives $25 a week will not accept referred work which pays only $25 per week, where acceptance of employment entails loss of his pension, temporarily or permanently. He will not, in rerum natura, sacrifice the stipend of $25, which he secures without rendering any service, so that he can earn $25 by labor, be it hard or light work. Will he forego his $25 pension to accept employment at $35 or $40 a week? If he says he will, if he should register for such work, his good faith becomes relevant. These considerations do not apply to the employe who has income from investments; that income accrues whether he works or not; and he does not sacrifice it by accepting employment.

. This brings us to defects of these records. There is oral testimony to the effect that under the United Mine Workers' pension plan a member receives $100 a month upon condition that he permanently withdraw from work in the mines. (This would seem to exclude the possibility of engaging in light work in the mines.) Whether he can, without losing his pension, temporarily or perma-

---

of the labor force and provide some income to a greater number of individuals": Employee Pensions in Collective Bargaining, 59 Yale Law Journal, 678, 696. See also, passim, Collective Bargaining, by Leonard J. Smith. (Prentice-Hall.)

nently, engage in other occupations has not been developed. The board's counsel relies largely upon statements in a colloquy between the referee, a union representative and the attorneys, but, as we read the record, the conversation was fruitless; it developed more heat than light. Undoubtedly the terms of the pension exist in written or printed form,[6] and, although the board is not bound by the niceties of technical rules of evidence, Law, §505, 43 P. S. §825, it should have required production of it, regardless of where the burden of proof lay. Only with knowledge of the exact text of the rules can the board or this Court determine the terms of the pension plan and its impact upon claimants' availability for suitable work and their good faith in registering for work.

It has been said that some pension plans require a retired employe to maintain his union membership "in good standing."[7] This suggests that the constitution and by-laws of the union should be examined to determine whether a member who engages in work outside of his craft may continue his membership. The terms under which a member may retain his membership as a condition for drawing his pension are relevant upon the question of his availability for work.

Consideration has been given to the position of the employer who, like appellant, has furnished the whole of the pension fund and finds his experience rating raised

---

[6] The agreement between the United Mine Workers and the coal operators has been printed, but the rules under which the Health and Welfare Fund grants pensions have not been found. The agreement provides that the "Trustees shall designate a portion of the . . . payments . . . [to be] used for providing pensions or annuities for the members of the United Mine Workers of America": 5 Labor Law Reporter, p. 53, 255. (Commerce Clearing House.) The rules governing the administration of the Fund should be produced.

[7] Pension and Profit Sharing Service, supra, p. 2518; How To Plan Pensions, by Carroll Boyce, (McGraw-Hill) p. 29.

by awards of pensioners' claims for unemployment compensation. The problem has had the attention of experts in the field, who have suggested either revision of existing legislation or suitable covering provisions in collective bargaining agreements.[8] The writers agree that, in the absence of modified legislation or agreements, the eligibility of pensioners for unemployment compensation must be determined under prescribed statutory qualifications. That presents a question of law which can be decided only upon records which contain adequate evidential data and suitable findings of fact.

Pendleton's status as a recipient of old age assistance is established. He receives $37.22 a month which he loses only during months when his wages for services rendered amount to $15. Act of Congress of August 14, 1935, as amended, 53 Stat. 1367, 42 U. S. C. A. §403(d) (1). Our study of the Act did not uncover any prohibition against the acceptance of unemployment compensation.

The decisions are vacated, and the records are remanded to the board for further proceedings with directions to take additional testimony.

---

[8] Pension and Profit Sharing Service, supra, p. 7101; How to Plan Pensions, supra, p. 31.