24 N.J. Super. 277 (1953)
94 A.2d 339
WENDEL KRAUSS, PLAINTIFF-RESPONDENT,
v.
A. & M. KARAGHEUSIAN, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1952.
Decided January 13, 1953.
*279 Before Judges McGEEHAN, BIGELOW and JAYNE.
*280 Mr. Martin J. Kole argued the cause for appellant (Messrs. Stein & Stein, attorneys; Mr. Frederick Z. Feldman, on the brief).
Mr. Sol D. Kapelsohn argued the cause for respondent (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys; Mr. Irving Leuchter, on the brief).
Mr. Clarence F. McGovern argued the cause for Board of Review, Division of Employment Security, Department of Labor and Industry.
The opinion of the court was delivered by JAYNE, J.A.D.
Counsel for the defendant-appellant represents the controversial question projected by this appeal to be one of novel impression in the domain of judicial review. It emanates from the administration of our Unemployment Compensation Law (R.S. 43:21-1), which originated in the statutory law of our State in 1936. L. 1936, c. 270. Parallel legislation exists today in all 48 states, Alaska, the District of Columbia, and Hawaii, so that it may perhaps be said in accord with the intimations of counsel that although there is a lapful of pertinent administrative board and agency decisions, there are as yet only a handful of court decisions. We must recognize that the efficiency of legislation designed to provide social and economic security against the hazards of involuntary unemployment inheres in the wisdom of its administrative processes, and that administrative policies permissible within the boundaries of the legislation grow best in the soil of practical experience, hence except for cogent reasons courts are not inclined to interpose.
The present appeal brings before us the determination of the board of review appointed pursuant to R.S. 43:21-10(d) in a proceeding in which it was disclosed that one Wendel Krauss, who had been continuously in the employ of the defendant from 1929, requested on January 12, 1951, at the age of 68 that he be permitted to retire and receive the retirement *281 allowances to which he would be entitled by virtue of the terms of the existing retirement and pension agreement between his employer and its employees. His request was granted and his eligibility for such pension payments was approved.
On September 20, 1951, however, he filed a claim for unemployment compensation. The local agency resolved that he was eligible for such benefits. Upon review the appeal tribunal reversed the determination of the local agency, and that which is before us is the adjudication of the board of review by which the determination of the appeal tribunal is reversed. The functions of the board are quasi-judicial. Adolph v. Elastic Stop Nut Corp., America, 18 N.J. Super. 543 (App. Div. 1952).
In our consideration of the decision here impugned, we shall begin at the beginning and first recognize the factual findings of the board. We quote:
"He had been working in a cold, wet place which was filled with heavy odors from wet washed wool. This caused him to suffer from headaches and other ailments.
He will not return to his employer in any capacity, although there is no evidence that the employer offered him any other work or had any other work for him. Between September 5, 1951, the date of his claim, and November 15, the date of the Appeal Tribunal hearing, he consistently sought work on at least three days in each week, going to three or four places each day.
He lives in the City of Elizabeth. Not only is there no evidence that the employer alone constitutes a substantial portion of the labor market in that area, but we are satisfied that we are justified in taking judicial notice of the fact that actually that employer's factory is only a small section of the general labor market in the Elizabeth area."
The opening criticism of the employer is that the plaintiff voluntarily terminated his employment in the factory of the defendant "without good cause." This was fundamentally a factual matter. Noticeably the board resolved that his place of employment was cold, wet, and filled with "heavy odors from wet washed wool," which "caused him to *282 suffer from headaches." There was competent evidence undersetting the finding of those facts and we are not influenced by any material in the record to adopt a contrary determination. Cf. Curtis v. Liberty Restaurant, 4 N.J. Super. 13 (App. Div. 1949), affirmed 3 N.J. 1 (1949).
However, a solution of the predominant question requires a comprehensive consideration of all of the relevant facts in their relation to the eligibility of the plaintiff to receive unemployment benefits under the requirements of the statute.
Concisely stated, those facts are that the plaintiff, having attained the age of 68, notified his employer of his desire to retire and upon his retirement from that service and continuously since has received private pension allowances of $10.90 a month from his employer. He remained idle for a period of several months after his retirement and then during a period of several weeks preceding the filing of his claim for unemployment benefits he actively but unsuccessfully searched for some remunerative occupation. True, he has not sought and will not accept employment in any capacity from the defendant, his former employer, if some such employment were available. Because of his age he desires "light work." Prior to his service for the defendant as a pump operator he had obtained some experience in the operation of screw machines, in the building of greenhouses, and as a painter and a pipefitter's helper. He is willing to accept employment in those capacities or any other work which at his advanced age he is capable of performing.
The public policy underlying the enactment of the Unemployment Compensation Law is expressed in R.S. 43:21-2 and irradiated in W.T. Grant Co. v. Board of Review, 129 N.J.L. 402 (Sup. Ct. 1943). The commanding objective of the remedial legislation is to afford a protection to society against the economic hazards of involuntary unemployment, not to furnish a welcome sedative to those who prefer to drift more comfortably on the tides of indolence. Valenti v. Board of Review of U.C.C. of N.J., 4 N.J. 287, 290 (1950) is explanatory.
*283 Among the several requirements to entitle an individual to receive benefits under the terms of our statute are those specified in subdivision (c) of R.S. 43:21-4, to wit, that he is able to work, available for work and has demonstrated that he is actively seeking work. Such are the standard availability requirements discoverable in most of the state unemployment compensation statutes.
The ability of this claimant to perform some type of remunerative service is not expressly controverted if the meanings "capable of working" or "having the physical and intellectual qualifications to do some work" are ascribed to the statutory expression "able to work." The claimant is expected to be "qualified" to work, that is, to have the physical and mental ability and capacities to make him employable.
It may also be said that the claimant demonstrated that he was "seeking work," but not from his former employer. The predominant point of argument would seem therefore to be whether or not in recognition of the circumstances and of the import of the statute he was "available for work." This requirement is a broad one sometimes embracing the claimant's work history, the circumstances of his work separation, his personal work limitations, his attachment to the labor force for some suitable occupation, his willingness to work, and the existing state of the labor market in those respects relevant to his situation.
In general, the unemployment compensation laws have been interpreted to limit the availability requirement to suitable work. The criteria in determining suitable work include considerations of the degree of risk involved to health, safety, and morals, the claimant's physical and mental fitness, prior training, experience, earnings, and prospects of obtaining local work within the sphere of his qualifications and his residential situation. R.S. 43:21-5 (c) (1).
It would seem that there must be, however, a residue of work which remains within the claimant's availability after the elimination of all unsuitable work and all work *284 which the claimant may have good cause to refuse. Certainly the claimant must be willing to work and be able to perform some recognized sort of work which is ordinarily remunerative. Old age does not of itself conclusively establish that a claimant is unavailable for work.
In the present proceeding it is argumentatively asserted by the appellant that notwithstanding the uncontroverted activities of the claimant in seeking work, nevertheless his voluntary retirement from his regular occupation, his failure to apply thereafter to his former employer for some kind of work, and his expressed refusal to accept any re-engagement from that company if open to him render him unavailable for work within the import and purpose of the statute.
That abstract proposition should be somewhat qualified by the factual circumstances and findings of the present case. Here, there was evidence sustaining the finding of the board that the working conditions of the former employment had become unsuitable for him. The board evidently considered that the termination of the employment was not entirely voluntary. This is a significant characteristic of the present case.
We do not understand that an individual who has in fact voluntarily terminated his regular employment because the working conditions were no longer appropriate and befitting to one of his age, may never thereafter re-enlist as a member of the so-called labor force.
A limitation of availability is undoubtedly reflected in some degree by the self-imposed limitation on the individual's willingness to work. While the statute was not intended to bestow compensatory relief upon one whose unemployment is basically attributable to one's arbitrary, exalted, and fanciful volitions, yet an availability for any and all classes of work is not required.
The claimant's readiness to work may well be estimated by the ascertainment and consideration of: (1) the personal circumstances of the claimant, (2) the pertinent conditions created by the claimant, and (3) the conditions beyond the *285 choice and control of the claimant. Hence a simple and explicit definition of "available for work" applicable to all situations is not feasible.
So, too, while the terms "eligibility" and "disqualification" are affiliated in the achievement of the statutory purpose, yet there is some recognizable distinction between them as employed in the administrative processes of the statutory object. Conceivably, some facts may constitute grounds for disqualification only. Here the board was concerned with the eligibility of the claimant. Perhaps the commonly applied test is whether the individual claimant would, in actuality, now be working were it not for his inability, despite his reasonable quests, to obtain work that is suitable for him.
It is time now to emerge from the discussion of fundamentals and more specifically to concentrate on the particular issues presented by the instant appeal.
In substance the inquiry addressed to us is whether a claimant who in the circumstances here disclosed retires from his existing regular employment in pursuance of a contractual pension plan, accepts the monthly pension allowance of $10.90, thereafter seeks remunerative work appropriate to his capacities and abilities but expressly declines any available re-engagement by his last employer, is entitled to unemployment compensation under the terms of our statute.
Let us consider separately the two components. First, does an individual who voluntarily retires from his regular and available employment on pension thereby withdraw from the labor market, and per se become unavailable for work and ineligible to receive benefits under the statute?
The Wisconsin unemployment act, for example, contains the provision [sec. 108.04(7a)]: "If an employe terminates his employment with an employer, he shall be ineligible for any benefits * * *." Vide, Madison Gas and Electric Co. v. Gardner, (Cir. Ct. Wis., Feb. 6, 1951), in which it was held that the retirement on pension rendered the claimant ineligible.
*286 But to hold upon an examination of our statute that the Legislature so intended regardless of the surrounding and accompanying circumstances of the individual case would seem judicially to impose a positive restriction upon the delegated administrative powers of the agencies in determining the application of the prescribed legislative standards to the particular claim.
Does the mere circumstance that an employee at the advanced age of 68 years finds his regular employment unsuitable for him and resolves to discontinue such work, whereupon he becomes entitled to a modest pension of $10.90 a month, thereby conclusively establish that he is not "able, ready or willing, viz., available for work"? We think not. Vide, Keystone Mining Co. v. Unemployment Comp. Bd. of Rev., 167 Pa. Super. 256, 75 A.2d 3 (Super. Ct. 1950). Nor do we think that the mere acceptance and retention of so modest a pension necessarily evinces an intention on the part of the employee to detach himself from the labor force.
Among the influential circumstances to be considered is the intrinsic nature of the retirement. For example, the employee may have directly or indirectly contracted for a termination of his employment on pension at a specified age, say 65, by which agreement both he and his employer are bound, and his retirement was entirely due to the terms of the agreement into which the employee had willingly entered. Cf. Fleiszig v. Board of Review, 412 Ill. 49, 104 N.E.2d 818 (Sup. Ct. 1952). It is conceivable that such contracts might be demanded of employers by the representatives of employees.
We discover no such agreement of compulsory retirement in the record before us but rather a finding that the former employment was terminated by the claimant because the work had become unsuitable and the allowance of the pension accompanied the cessation of service.
We therefore purposely refrain from expressing any opinion in the present memorandum concerning the eligibility of a claimant who has voluntarily entered into and availed himself *287 of an agreement with his employer not only authorizing but requiring his retirement at a specified time and whose retirement was occasioned by reason of the terms of his own contract.
The voluntary discontinuance of the particular employment would appear to have primary relevancy to whether he is in the category of one who "is actively seeking work." Does his previous voluntary relinquishment of employment operate as a permanent estoppel against his admission into that statutory category or did it constitute a waiver of all right to the statutory unemployment compensation? In the circumstances of the present case which we believe may be considered, we are disinclined to ascribe to his previous action either of such effects.
We accordingly direct our attention to the second constituent of the question which pertains to the consequences of the expressed refusal of the claimant to solicit or accept any employment, if available, from his former employer. Anent this point, we do not recognize such a refusal of itself, disjoined from the surrounding and perhaps explanatory circumstances, to be in all instances conclusive proof of ineligibility. Individualization is administratively inherent in the concepts of willingness, readiness and availability for work.
It may be said that this element of availability is sometimes subjective in nature in that it abides in the mental attitude of the claimant. An unemployed person may be found to have an inordinate estimation of his abilities, an exaggerated notion of the worth of his services, an aversion to certain classes of work, or even superstitions. Certainly unemployment is not to be regarded as involuntary under the statute where it is perched on a whimwham. Exposure to the labor market must be sincere. Good faith cannot exist independently of honest and reasonable intentions. Cf. W.T. Grant Co. v. Board of Review, supra; Muraski v. Board of Review of U.C.C., 136 N.J.L. 472 (Sup. Ct. 1948).
*288 Assuredly it must be made to appear that the claimant has been and continues to be "actively seeking work." R.S. 43:21-4 (c); Boyer v. Board of Review, 4 N.J. Super. 143 (App. Div. 1949); De Rose v. Board of Review, 6 N.J. Super. 164 (App. Div. 1950); Guidice v. Board of Review of Div. of Employment Sec., 14 N.J. Super. 335 (App. Div. 1951).
Before us in the record of the present case is the conclusion of fact by the board that the claimant had been actively seeking suitable work.
"The unemployment compensation acts are administered by administrative agencies which must be given wide discretion and freedom in their activities." Sutherland, Statutory Construction (3d ed.), § 7211; Charles Headwear, Inc. v. Board of Review, 11 N.J. Super. 321, 328 (App. Div. 1951). It must be realized that a realistic interpretation of the facts and circumstances disclosed by the evidence in the given case is absolutely essential to the successful administration of the statutory plan. That function is primarily entrusted by the legislature to the designated agencies.
While proof of a tender of employment to one who announces in advance that the offer will not be accepted is not necessary, yet in the present case there is no information whether a suitable job is open to the petitioner with his former employer or whether his former employer would be willing to re-employ him. If it is made to appear that a suitable engagement by his former employer is open to him, would not his refusal to accept it without good cause constitute a basis for his disqualification?
But where, as here, there is evidence that the claimant was actively searching for suitable employment and the debatable question pertains to the exhaustiveness of his efforts, we are not disposed except for some cogent reason to overthrow the conclusion of the board. Guidice v. Board of Review, supra; Walton v. Wilhelm, 120 Ind. App. 218, 91 N.E.2d 373 (Ind. App. 1950).
The determination of the Board of Review is affirmed.