## Guaranteed Annual Wage

COHEN, Attorney General, January 26, 1956.—You have requested this department to advise you concerning the effect of certain agreements recently negotiated between the United Auto Workers on the one hand and the Ford Motor Company and General Motors Corporation on the other. Specifically, you ask whether an individual receiving supplemental unemployment com-

pensation benefits under the terms of one of these agreements also may receive full benefits under the provisions of the present Pennsylvania Unemployment Compensation Law.

The salient features of the agreements under consideration are:

1. The employer pays into a separately established trust fund 5 cents per hour for each hour worked by the employes covered by the agreement until the maximum amount provided for under the terms of the agreement has been reached.

2. The payments made by the employer into the trust fund are not recoverable by the employer under any circumstances.

3. The moneys in the trust fund are to be used to pay supplemental unemployment compensation benefits to the employes over and above the amounts to which they may be entitled under the provisions of a State unemployment compensation law.

4. As a general rule, an employe is not entitled to receive any payments from the trust fund unless he is also concurrently eligible for benefits under a State unemployment compensation law.

5. The amount which an employe is entitled to receive from the trust fund is, within the maximum sum stated in the agreement, determined by his length of service with the employer.

6. The employe has no vested right to any of the moneys paid into the trust fund except as he may qualify for benefits therefrom under the terms of the agreement.

7. The moneys paid into the trust fund are specifically designated as not being wages for any purpose.

8. The benefits paid out of the trust fund are specifically designated as unemployment compensation benefits supplemental to any such benefits received under a State unemployment compensation law.

Section 3 of the Pennsylvania Unemployment Compensation Law (Declaration of Public Policy) provides, in part, that:

". . . Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency . . .": Act of December 5, 1936, P. L. (1937) 2897, 43 PS §752.

It seems clear, therefore, that private plans for unemployment compensation benefits, such as the agreements under consideration, are specifically within the general policy of the Commonwealth with respect to the subject matter as evidenced by the language of section 3. In this connection it is interesting to note that private unemployment compensation plans antedate by many years the enactment of governmental unemployment compensation plans, one such plan having been initiated by the National Wallpaper Company in 1894. We understand that, as of this year, there are approximately 200 such plans in operation throughout the United States.

The Federal Social Security Act of 1935, as well as a few State unemployment compensation laws, recognized the existence of such private plans. It is significant, therefore, that when the Pennsylvania Unemployment Compensation Law was enacted in 1936, it was specifically provided in section 402(c) that a claimant would be ineligible for benefits under the Pennsylvania law for any week with respect to which he was claiming unemployment benefits under another State or Federal law. In view of the principles enunci-

ated in the declaration of public policy (section 3) and the failure to include benefits under private compensation plans as a disqualifying factor under section 402(c), we conclude that the concurrent receipt of benefits under a State plan and a private plan does not violate the basic policy of the law.

An examination of other pertinent provisions of the Pennsylvania Unemployment Compensation Law discloses, likewise, that there is no other provision which specifically makes the receipt of benefits under a private plan a factor for disqualification under the State law. The general conditions prescribed for eligibility under the State law are set forth in section 401 of the law. As the Superior Court said in the case of McFarland v. Unemployment Compensation Board of Review, 158 Pa. Superior Ct. 418, 45 A. 2d 423 (1946), a claimant who has met these qualifications is not to be disqualified except by virtue of some other applicable provision of the law itself. The general conditions of ineligibility are contained in section 402 of the law, and we think it apparent that none of these provisions is specifically applicable to the situation under consideration.

The basic condition upon which eligibility for compensation under the Pennsylvania Unemployment Compensation Law is predicated is that the claimant shall be "unemployed". This term is defined in subsection 4(u) of the law, in part, as follows:

"An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such a week is less than his weekly benefit rate plus six dollars ($6): Provided, That for the purposes of

this subsection, (i) vacation pay and similar payments, whether or not legally required to be paid, and (ii) wages in lieu of notice, separation allowances, dismissal wages and similar payments, which are legally required to be paid, shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department. . . .": Act of December 5, 1936, P. L. (1937) 2897, as amended by the Act of August 24, 1953, P. L. 1397, 43 PS §753 (*u*).

Regulation 108 of the Department of Labor and Industry, Bureau of Employment Security, implementing the above provisions of section 4(*u*), as currently in effect, provides, in part, that:

"(1) (a).—Application of this regulation is intended (1) to insure that unemployment compensation shall not be paid for periods of unemployment during or for which the claimant shall receive either a vacation with pay or a terminal leave with wages or salary or a payment in lieu of wages or salary. . . ."

It is apparent that an employe performs no services during the week involved, hence, the provisions of paragraph (I) (i) of subsection 4(*u*) are not applicable. Thus, unless payments from the fund constitute "remuneration" paid or payable with respect to the week in question, the recipient is not disqualified from receiving benefits under the statute.

Although the word "remuneration" is not specifically defined in the Unemployment Compensation Law, it was given a broad definition in Fazio Unemp. Comp. Case, 164 Pa. Superior Ct. 9, 63 A. 2d 489 (1949). In holding that voluntary dismissal payments are "remuneration", the court said:

"We are obliged to conclude from the language used in the Act that, if the term 'wages' is equivalent to the term 'remuneration', less the various categories specified, then the term 'remuneration' must be equivalent

to the term 'wages', together with the specified categories of payments. Consequently, a voluntary dismissal payment is 'remuneration', and the employe who receives it does not become unemployed until the end of the period for which it was paid. . . .

"The provisions of section 4(u), (x) were obviously designed, inter alia, to prevent the payment of benefits during periods of idleness where the claimant has received money, the payment of which relates to the particular period of idleness. This purpose is in accord with the general purpose of the Unemployment Compensation Law, which is to alleviate the rigors of unemployment": 164 Pa. Superior Ct. 9, 12-13.

The definition of "remuneration" was restricted by the subsequent decision in Pendleton Unemp. Comp. Case, 167 Pa. Superior Ct. 256, 75 A. 2d 3 (1950), where the court considered the effect on eligibility of receiving pension payments from the Health and Welfare Fund of the United Mine Workers:

"It is safe to assert that pension payments are not wages within the meaning of the Law, §4(x), 43 P. S. §753, and that their receipt will not disqualify an employe who meets the other requirements of the law. Nor are payments made by an employer to a pension fund regarded as wages. Law, §4(x)(2)(A). The purpose of the unemployment legislation is 'the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own'; Law, §3, 43 PS §752. By it the Legislature seeks to prevent 'the spread of indigency', but an employe need not be indigent to secure the benefits provided by the Law. If he meets the requirements of the Law he is entitled to compensation even though he has other resources and from them receives income adequate for his needs; e.g., interest on savings accounts, mortgages, United States bonds, or rent for real estate owned by him. The purpose of a pension

plan is 'to pay additional compensation for services rendered in the past': Kline v. State Employees Retirement Board, 353 Pa. 79, 85, 44 A. 2d 267. However it is not remuneration within §4(u), 43 P. S. §753, since the pensioner performs no service during the period covered by the pension payments": 167 Pa. Superior Ct. 256, 260.

In addition to the types of "remuneration" mentioned in the Pendleton decision, there are other types of "remuneration" the receipt of which does not disqualify an otherwise qualified claimant, e.g., certain types of gratuities (Bd. Dec. B-26769), Federal subsistence allowances (Bd. Dec. B-18115), rents (Bd. Dec. B-18937A), and workmen's compensation payments (Bd. Dec. B-7993).

As noted above, payments into the trust fund are made by an employer during a period of employment. In this respect they are similar to payments made currently by an employer into a retirement or pension fund or into a workmen's compensation fund. If, as indicated by the court in the Pendleton decision, the ultimate receipt of benefits from such funds does not constitute "remuneration" under the Unemployment Compensation Law, it follows that the receipt of benefits from the trust funds established under the Ford and General Motors agreements likewise do not constitute "remuneration". It is thus unnecessary to determine whether these benefits are "paid or payable" with respect to the week in question.

Accordingly, it is our opinion that an individual who receives benefits under the terms of the United Auto Workers-Ford Motor Company or United Auto Workers-General Motors Corporation agreement may also receive full benefits under the provisions of the present Pennsylvania Unemployment Compensation Law, assuming, of course, that such individual is otherwise qualified.