Gianfelice Unemployment Compensation Case.
Warner Company *v.* Unemployment
Compensation Board of Review,
Appellant.

546

Argued April 20, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, and BOK, JJ.

*Harry J. Rubin,* Deputy Attorney General, with him *Sidney Reuben,* Assistant Attorney General, and *Thomas D. McBride,* Attorney General, for Unemployment Compensation Board of Review, appellant.

*Bernard N. Katz,* with him *Meranze and Katz,* for claimant, appellant.

*Roy Wilkinson, Jr.,* with him *Love & Wilkinson,* for employer, appellee.

*Arthur Littleton* and *Morgan, Lewis & Bockius,* for interested persons, under Rule 46.

*David Cohen* and *Leonard S. Wissow,* for interested person, under Rule 46.

*Sidney G. Handler* and *Handler and Rosenberg,* for interested persons, under Rule 46.

*Raymond P. Shafer* and *John S. Wellington,* for interested persons, under Rule 46.

*M. H. Goldstein,* for interested person, under Rule 46.

*Albert C. Shapira,* for interested person, under Rule 46.

*J. Alfred Wilner, Arnold D. Wilner, James Craig Kuhn, Jr.* and *Wilner, Wilner and Kuhn,* for interested persons, under Rule 46.

*Alexander Eltman,* of the New York Bar, and *Wollman, Tracey, Schlesinger and Salus,* for interested person, under Rule 46.

*Frank J. Donner* and *Robert Z. Lewis,* of the New York Bar, and *David Cohen,* for interested person, under Rule 46.

*Abraham Weiner* and *Mayer, Weiner & Mayer,* of the New York Bar, for interested person, under Rule 46.

OPINION BY MR. JUSTICE COHEN, July 24, 1959:

Antonio Gianfelice was employed by Warner Company on January 1, 1918, although he claims to have begun working for the company as early as 1909. He worked continuously until January 31, 1956, on which date he was separated from his employment pursuant to an agreement entered into and subsisting between his union and his employer. Section V of that agreement incorporated a company pension plan referred to as Supplement "A", and Section IV of Supplement "A" stated as follows: "1. Each participant who, while an employee of the Company has attained age 65 on July 1, 1950, or attains age 65 thereafter, shall be eligible to retire on July 1, 1950, or his attainment of age 65, whichever is later, and, if he has completed 10 or more years of continuous service, shall be eligible for retirement income benefits computed in accordance with Section V hereof.

"2. A participant may remain in service of the Company after his attainment of age 68 or July 1, 1952, whichever last occurs, only with the consent of the company and upon his retirement thereafter, if otherwise qualified, he shall be entitled to receive retirement income benefits." Gianfelice became 68 on January 14, 1956. There is no dispute that he personally

wished to continue in his work; the Superior Court so recognized.[1]

Gianfelice filed an application for unemployment benefits and registered for work with the Bureau of Employment Security on February 1, 1956. His waiting week was served; and on February 9, 1956, the bureau issued its determination that he was eligible for benefits. The employer then appealed, and the referee reversed the bureau. A further appeal by the claimant to the Unemployment Compensation Board of Review resulted in a reversal of the referee's decision, and the employer then appealed to the Superior Court.

In reversing the Board of Review, the Superior Court divided 3-2. The majority interpreted the labor-management contract and pension plan as an agreement by Gianfelice not to remain employed after age 68. The Warner Company's privilege not to enforce compliance with this agreement did not affect Gianfelice's status. The Court relied on several of its prior decisions to support its conclusion that a union member is bound by his union's actions in negotiating a collective bargaining agreement with the employer. While recognizing that Gianfelice's retirement was not *actually voluntary* on his part, the Court concluded: ". . . claimant's retirement in the case at bar was . . . voluntary in the legal sense since his services were terminated under the provisions of a contract negotiated by his bargaining agent." *Gianfelice Unemployment Compensation Case*, 186 Pa. Superior Ct. 186, 189, 142 A. 2d 739 (1958).

The dissenters felt that the sole reason for Gianfelice's retirement was the company's refusal to permit him to continue work, the choice being with the company's sole discretion under paragraph 2 of the perti-

---

[1] *Gianfelice Unemployment Compensation Case*, 186 Pa. Superior Ct. 186, 188, 142 A. 2d 739 (1958).

nent contract section quoted above. Therefore, the retirement was involuntary.

The disagreement within the Superior Court arose mainly from the interpretations placed upon the option clause in the contract. There is no doubt that the option clause is ambiguous; that is, it says neither (1) that Gianfelice must retire at age 68 only if the company affirmatively acts to invoke the clause, nor (2) that Gianfelice must retire and may continue only if he secures permission to do so from the company. However, we need not resolve this ambiguity in order to decide the present issue.

The major premise of the Superior Court that an employee is bound by his union's agreement with his employer as expressed in a collective bargaining agreement is unexceptionable on its face. However, in the present context the Superior Court has used this premise to disqualify persons for benefits under the Unemployment Compensation Law who otherwise would be eligible. We do not believe that this result is correct.

Were Gianfelice not covered by the collective bargaining agreement involved here, the company could have dismissed him at its pleasure. *NLRB v. Jones & Laughlin Steel Corporation,* 301 U.S. 1, 45 (1936); *Polk v. Steel Workers Organizing Committee,* 360 Pa. 631, 634, 62 A. 2d 850 (1949). Were he so discharged, however, he would be entitled to unemployment compensation. Conversely, absent the agreement, Gianfelice could have quit at *his* pleasure but would have been ineligible for unemployment benefits as a "voluntary quit." This latter situation led to a proper denial of benefits in *Campbell Unemployment Compensation Case,* 180 Pa. Superior Ct. 74, 117 A. 2d 799 (1955).

Does the fact that a collective bargaining agreement is present change these considerations under the Unemployment Compensation Law? Such agreements

usually restrict the employer's right to dismiss at will until the employee reaches a certain age; they thus protect the employee from arbitrary dismissal. It would be anomalous to say that, in gaining this protection against his employer, an employee has lost a benefit which he otherwise would receive from the state—the right to receive unemployment benefits if dismissed—on the theory that he has voluntarily agreed to quit. The pressures of the collective bargaining process are too complex to permit this over-simplified theory to govern a determination here. They would require an inquiry into each case to determine the position of each side at the bargaining table, and even then a clearcut answer would undoubtedly not be forthcoming.

This is one reason why the collective bargaining agreement should not control in determining the eligibility of a retired employee for unemployment compensation; *rather, the factual matrix at the time of separation should govern.* This was the position taken by Judge (now Justice) BRENNAN in *Campbell Soup Co. v. Board of Review,* 13 N.J. 431, 100 A. 2d 287 (1953), wherein the New Jersey Supreme Court found the claimant eligible for benefits.[2] Viewed in this light, the questions here become simply (1) did Gianfelice

---

[2] Judge (now Justice) BRENNAN said in *Campbell Soup Co. v. Board of Review,* 13 N.J. 431, 100 A. 2d 287, 289 (1953): "The Legislature plainly intended that the reach of the subsection was to be limited to separations where the decision whether to go or to stay lay at the time with the worker alone and, even then, to bar him only if he left his work without good cause. The claimants here [as in the instant case] did not choose of their own volition to leave the employ of Campbell Soup Company when they were separated. They left because they had no alternative but to submit to the employer's retirement policy, however, that policy as presently constituted was originated. Their leaving in compliance with the policy was therefore involuntary for the purposes of the statute."

cease working voluntarily as a matter of fact, and (2) was Gianfelice available for work thereafter? Since the answers on the record are (1) no, and (2) yes, Gianfelice is entitled to benefits.

Moreover, we believe that the labor-management agreement cannot govern our determination in this case for another reason. The Unemployment Compensation Law was enacted to alleviate the hardships attendant upon unemployment. Act of December 5, 1936, P.L. [1937] 2897, §3, 43 P.S. §752; *McFarland v. Unemployment Compensation Board of Review,* 158 Pa. Superior Ct. 418, 45 A. 2d 423 (1946). It is a remedial statute designed to provide support for workers who are unemployed except for those disqualified by one of the specific provisions of §402. *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 559, 45 A. 2d 898 (1946). In furtherance of this policy, the General Assembly included §701, 43 P.S. §861, in the law.[3] This provision renders invalid any agreement by an employee to waive or release any of his rights under the act. It is our view that if the labor-management agreement were able to be relied upon to disqualify Gianfelice as a "voluntary quit" when his separation from work was not in fact voluntary, the agreement would be invalid to such extent.

Support for the conclusion that a statutorily-expressed public policy cannot be modified by private agreement is readily found in analogous situations. In construing the federal "Fair Labor Standards Act of 1938, as amended," the United States Supreme Court has held that a labor-management agreement cannot be relied upon to bar a recovery of overtime pay. *Martino v. Michigan Window Cleaning Company,* 327 U.S. 173,

---

[3] Section 701 declares: "No agreement by an employe to waive, release, or commute his rights to compensation, or any other rights under this act, shall be valid."

177-8 (1946). Again, that Court, in determining the meaning of "work" in underground iron ore mines under the same act, stated: "But in any event it is immaterial that there may have been a prior custom or contract not to consider certain work within the compass of the workweek or not to compensate employees for certain portions of their work. The Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only part of it. Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. *Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights."* Tennessee Coal, Iron & Railroad Company v. Muscoda Local No. 123, 321 U.S. 590, 602-3 (1944). (Emphasis supplied). Accord: *Jewell Ridge Coal Corporation v. Local No. 6167, U.M.W.,* 325 U.S. 161, 166-9 (1945).

Under §204 of The Pennsylvania Workmen's Compensation Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §71, a release of damages prior to the date of an accident, other than the workmen's compensation agreement itself, is declared invalid; and, as we stated in *Anderson v. Carnegie Steel Co.,* 255 Pa. 33, 39, 99 Atl. 215 (1916), this provision is simply a statutory extension of a public policy theretofore announced.

Again, in *Sola Electric Company v. Jefferson Electric Company,* 317 U.S. 173 (1942), the United States Supreme Court held, in a suit between parties to a patent license contract, that the licensee could challenge his own price-fixing agreement in the contract as invalid under the Sherman Act's prohibition against price-fixing.

Judge LEARNED HAND applied a similar principle in *United States ex rel. Johnson v. Morley Construction Co.*, 98 F. 2d 781, 788-9 (2d Cir. 1938), cert. denied., 305 U.S. 651 (1938), in upholding a claim by laborers for prevailing wages (required by statute to be paid in fulfilling government contracts) despite the fact that the laborers had given sealed releases declaring that they had received the prevailing rate.

These analogous examples illustrate the principle we here apply. Where a statute of the Commonwealth expresses a public policy designed to alleviate a condition of possible distress among the public or a segment thereof and *explicitly proscribes waiver of the benefits of the act,* no private agreement, however valid between the parties, can operate as such a waiver. Here, the provisions of the agreement under which Gianfelice had to retire, while legitimate conditions of employment and binding between Gianfelice and the Warner Company, cannot thwart a clearly-expressed state statute under which Gianfelice is entitled to benefits.

The opposite principle—that employer and employee cannot agree that the latter receive benefits when the law precludes such benefits—has been stated with finality by the Superior Court. *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 152, 141 A. 2d 410 (1958). We see no difference in the principle to be here applied.[4]

---

[4] While not directly on point, *Barclay White Co. v. Unemployment Compensation Board of Review,* 356 Pa. 43, 50 A. 2d 336 (1947)—where an employee-member of a labor union was declared ineligible to receive unemployment benefits when he refused "suitable work" in an open shop because his agreement with his union precluded him from so doing furnishes another analogy. We there held that we could not determine what was, or was not, "suitable work" by reference to this agreement.

Finally, it has been intimated that because Gianfelice will be eligible for benefits under Company's retirement plan, he should not receive unemployment benefits. Suffice it to say, in answer to this contention, that nothing in the Unemployment Compensation Law disqualifies a recipient of a pension from receiving unemployment compensation if otherwise eligible; in fact, the opposite seems the case. Under §4(u) of the act, 43 P.S. §753(u), an individual is deemed unemployed if he performs no remunerated services during the claim week and if he is paid or owed no remuneration with respect to such week. Here, Gianfelice certainly has performed no services for which he was compensated; so he has qualified under the first condition. As to the second—that he be paid or owed no remuneration with respect to the claim week—the act is devoid of a definition of "remuneration"; and we must decide whether pension or retirement benefits are remuneration on the basis of existing legal principles. "Remuneration" is generally defined as a payment for services performed; and unless the pension here can be considered as such payment with respect to the claim week, Gianfelice qualifies under the second condition.

While this Court in the past has drawn a distinction between a pension and retirement pay, *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 Atl. 400 (1934), that distinction is irrelevant here. If a pension is involved, Gianfelice is receiving a gratuity from his employer; thus, no remuneration is being paid. If he is receiving retirement pay, he may be receiving remuneration; but it is being paid with respect to those prior weeks of service in which it was earned. Under either possibility Gianfelice remains eligible for benefits as an "unemployed" individual.

In addition, the Superior Court twice has stated that receipt of outside income, including pension bene-

fits, will not disqualify an employee for unemployment benefits. *Pendleton Unemployment Compensation Case,* 167 Pa. Superior Ct. 256, 260, 75 A. 2d 3 (1950); *Martin Unemployment Compensation Case,* 174 Pa. Superior Ct. 412, 416, 101 A. 2d 421 (1953).

Finally, no public policy compels disqualification. With regard to this point we note the existing situation in another area of remedial legislation—social security. Under the Social Security Act, 49 Stat. 620 (1935), as amended, 42 U.S.C. §§301 *et seq.* (1952), the receipt of pension benefits does not constitute wages such as would possibly subject an eligible person to a reduction in his social security benefits. 49 Stat. 623 (1935), as amended, 42 U.S.C. §403 (1952); 49 Stat. 625 (1935), as amended, 42 U.S.C. §409 (1952). Moreover, a recipient of social security payments may even continue to work after reaching retirement age and still receive his payments as long as his earnings do not exceed certain varying amounts. 49 Stat. 623 (1935), as amended, 42 U.S.C. §403 (1952). After reaching age 72, he may receive these payments in full regardless of the amount he earns by working. We find in a receipt of pension benefits no policy requiring disqualification for unemployment benefits of an otherwise eligible employee.

Since Gianfelice's unemployment arose not because he had voluntarily quit in fact; since the labor-management agreement cannot be referred to in order to supply a constructive "voluntary quit"; and since receipt of a pension would not disqualify him, we hold that Gianfelice is entitled to receive unemployment compensation.

Judgment reversed.

Mr. Justice BELL dissents.

Mr. Justice McBRIDE took no part in the consideration or decision of this case.