# Urban Unemployment Compensation Case.

520

Argued March 21, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Donald Grody*, with him *Goldstein and Barkan*, for claimant, appellant.

*Sydney Reuben*, Assistant Attorney General, with him *Raymond Kleiman*, Deputy Attorney General, and *David Stahl*, Attorney General, for Unemployment Compensation Board of Review, appellee.

*James Thomas McDermott*, with him *McDermott, Quinn & Higgins*, for employer, intervening appellee.

OPINION BY WATKINS, J., July 9, 1962:

In this unemployment compensation case the Unemployment Compensation Board of Review denied benefits under §402(b)(1) of the Unemployment Compensation Law, 43 PS §802(b)(1), because the claimant voluntarily terminated his employment without cause of a necessitous and compelling reason, in that he voluntarily retired to accept a pension.

The claimant, Victor Urban, was last employed as a debit agent for the Home Life Insurance Company of America on October 31, 1957. On July 1, 1957 he was 67 years of age and was eligible for retirement under a retirement plan in effect between him and the com-

pany. He continued working and received his first retirement check on November 1, 1957. The company claims he requested retirement as of that time and could have continued in his employment with the company's consent as he did since July 1, 1957. He accepted the check and never questioned his employer concerning work but denies that he requested retirement. Based on this contention he filed for unemployment compensation benefits on the ground that his separation was a result of "involuntary retirement".

On December 30, 1957, the Bureau of Employment Security had denied benefits to the claimant on the ground that he was excluded from benefits by not being in covered employment under §4 (1) (4) (17) of the law, 43 PS §753. This was affirmed by the referee. However, the Unemployment Compensation Board of Review reversed the referee and held that the claimant was a general employee and not an independent contractor.

The company, thereupon, appealed to this Court, and upon stipulation filed on August 19, 1960, we ordered the record remanded to the board "for the purpose of taking additional testimony and for further study and consideration in the light thereof, and the issuing of a new decision consistent therewith." Complying with that order the board, on October 11, 1960, again remanded the case to a referee for further hearing "To receive testimony on claimant's separation, availability and any other relevant testimony." Several more hearings were held, and finally, on November 3, 1961, the board vacated its decision of May 19, 1960, and made different findings, the most important of which was that claimant had been retired at his own request rather than by the company, and for that reason was ineligible for benefits.

At the outset, we should point out that the limitation of review by this Court, as fixed by the law, is of

particular significance in this case. We cannot substitute what we might possibly have found as facts or drawn as inferences for those found and drawn by the fact finders. The claimant has the burden of proof that his separation was not voluntary. *Smith Unemployment Compensation Case,* 167 Pa. Superior Ct. 242, 74 A. 2d 523 (1950).

The board is the arbiter of the facts and its findings are conclusive and must be sustained if the record contains competent and substantial evidence to support them. The record must be reviewed in the light most favorable to the party for whom the board found, giving that party the benefit of every inference which can be logically and reasonably drawn from the competent evidence. *Sledziowski Unemployment Compensation Case,* 195 Pa. Superior Ct. 337, 171 A. 2d 546 (1961), and it was, of course, the duty of the board to pass upon the credibility of the witnesses and the weight of their testimony. As the decision in this case was against the claimant, this Court must determine whether the findings of fact are consistent with each other and with its conclusions of law and its order, and whether such findings of fact can be sustained without a capricious disregard of the competent evidence. *Weckerle Unemployment Compensation Case,* 191 Pa. Superior Ct. 232, 156 A. 2d 604 (1959).

The question of covered employment which occupied the compensation authorities originally has disappeared from this case and is moot, if the board's determination that this is a case of "voluntary quit" is sustained.

The retirement plan in effect between the parties pertinent to our problem, reads as follows: "Section IV—Normal Retirement Date . . . (b) The Normal retirement date of a member who has attained his 56th birthday but who has not attained his 61st birthday at date of entry into the plan is the tenth anniversary

of the plan following entry." "Section VIII—Benefits . . . When a member attains his normal retirement date he shall retire and receive an annuity which is the actuarial equivalent of the amounts contributed by himself and the matching contributions of the company together with the interest credited up to the date of retirement. The amount of annuity provided shall be . . . In the event that a member with the consent of the company is continued in active service beyond his normal retirement date, no further contributions shall be made by the member or by the company . . ."

The claimant was admittedly eligible for retirement on July 1, 1957. He continued, however, to perform his duties as an employe with the necessary consent of his employer until October 31, 1957, his last day of work. The board concluded that the retirement plan was an optional one because of the language concerning the "normal retirement date", and the language permitting the employe to continue work. There is credible evidence to support the finding. Although the words "shall retire" are used, the words "normal retirement" and the clause permitting the employe to continue working beyond "normal retirement" seem to rebut its finality.

However, even if we were to decide that it is at least doubtful if the retirement plan was optional, as was said in the *Gianfelice Unemployment Compensation Case*, 396 Pa. 545, 550, 153 A. 2d 906 (1959): "There is no doubt that the option clause is ambiguous; that is, it says neither (1) that Gianfelice must retire at age 68 only if the company affirmatively acts to invoke the clause, nor (2) that Gianfelice must retire and may continue only if he secures permission to do so from the company. However, we need not resolve this ambiguity in order to decide the present issue." The Court went on to say that "the factual matrix at the time of separation should govern." The question

became simply, "(1) did Gianfelice cease working voluntarily as a matter of fact, and (2) was Gianfelice available for work thereafter? Since the answers on the record are (1) no, and (2) yes, Gianfelice is entitled to benefits."

So in this case if we are to be bound by the factual matrix at the time of separation, we, too, should ask the deciding questions (1) did Urban cease working voluntarily as a matter of fact, and (2) was Urban available for work thereafter? And the board found as a fact that the answer to (1) is yes, and the answer to (2) is no, so he is not entitled to benefits.

The record discloses the following facts: The claimant denies that he ever requested to be placed on retirement. He was eligible for retirement on July 1, 1957 but continued to work until October 31, 1957. He received his first retirement check on November 1, 1957. He did inquire as to Social Security benefits in 1956 and on several other occasions. He discussed his desire to retire and the amount of benefits on several occasions with a number of his superiors before and after July 1, indicating his interest in retirement. His interest in retirement as given to his immediate superiors was carried through the chain of command until it became a request for retirement to a Mr. Tegler, the vice-president in charge of this matter. As Mr. Dan Iatarolla, employer's district manager, testified: "Q. How came it to pass that he was pensioned? A. Well on several occasions he did come into the office and inquire about what amount of pension he would be entitled to if he would retire, which suggested to me that he did want to retire. What else could you think? . . . Q. Did you notify the company then that he requested to retire? A. I assumed as much, what else."

There is no definite request by the claimant to go on retirement, either oral or written, but the record is replete with testimony from which an inference of such request can be fairly, reasonably and logically drawn.

At the same time these conversations took place, the physical condition of the claimant was bad. It wasn't good from the time of his normal retirement date of July 1, 1957. He was hospitalized in September for an intestinal operation which limited his activities. It is also important to point out that not once during the entire period after receiving his first retirement check did he make inquiry of the company concerning his availability for work; or why he was placed on retirement. No indication was made to the company concerning any dissatisfaction with his retirement income and no demand or request made upon the company to permit his continued employment.

There is nothing in the circumstances contained in this record that is inconsistent with voluntary retirement unless the receipt of the retirement check on November 1, 1957 can be so interpreted. It is especially significant that he was paid his salary for the last week in October, in cash, by Mr. Raymond Christinzio, the company's District Field Manager, who personally visited him, at his home, for that purpose during that week. The payment of retirement as of November 1, indicated that his employment ended October 1, 1957 and there is testimony that this was so entered on the record for his benefit. Under such exceptional circumstances it would seem reasonable, if in fact he was being forced to retire, that he take affirmative action of some kind. He did file for unemployment compensation on November 4, 1957.

This lack of affirmative action on his part, together with all of the circumstances hereinabove recited, bolsters the board's finding that he failed in his burden of proof of a necessitous and compelling reason for the termination of his employment; and that the separation was voluntary in order to go on retirement.

Decision affirmed.

DISSENTING OPINION BY MONTGOMERY, J.:

This is an appeal from the November 3, 1961 decision of the Unemployment Compensation Board of Review which held the appellant to be ineligible for unemployment compensation under section 402(b)(1) of the Unemployment Compensation Law, 43 P.S. §802-(b)(1), because he voluntarily terminated his employment in order to receive a retirement pension under an optional retirement plan, and therefore his separation was without cause of a necessitous and compelling nature.

Claimant had been employed for 17 years by the Home Life Insurance Company as a debit agent. His duties were to make collections of premiums and to sell new insurance, and were performed outside the offices of his employer, although he reported to the company office twice each week for short periods of time. He was paid on the basis of a percentage of his collections plus a flat $5.00 per week service fee, and in addition was given a paid vacation. He was a member of Local 5, Insurance Workers International, which had a collective bargaining agreement with his employer providing for the pension plan under consideration. Under the terms of that agreement and plan claimant became eligible for retirement July 1, 1957, but continued to perform his duties until September 1, 1957, when he entered the hospital for surgery. He received sick pay from his employer up to and including October 31, 1957, but on or about November 1, he received a check for retirement benefits under the pension plan aforesaid. He retained the check and did not thereafter apply to his employer for re-employment. On November 1, 1957, he applied for unemployment benefits alleging that he had been pensioned by his company as of October 31, 1957. On November 7, 1957, the company replied to the "notice of application" previously sent to it, that claimant's last day of work had been November 1, 1957,

and that his separation was indefinite or permanent because of "Involuntary Retirement".

On December 20, 1957, the Bureau of Employment Security rendered its decision refusing compensation because "Claimant is Financially Ineligible 404." Claimant appealed, claiming that "I was not paid on straight commission basis because when I was sick I was still paid even [when] I did no selling." On March 25, 1958, after hearing, the referee affirmed the decision of the bureau. Claimant again appealed, contending that "I wish to make a further appeal on this decision as other debit insurance collectors in Pennsylvania have received U. C. benefits." The matter was thereupon remanded to a referee to conduct an additional hearing. Thereafter, on February 19, 1959, the Board of Review found, inter alia, that "(1) The claimant had been employed as a debit insurance collector for the Home Insurance Company. . . . His last day of work was October 31, 1957, at which time he was retired by the company." It concluded that the relationship between him and his employer had been one of general employment rather than that of an independent contractor, and reversed the referee. However, on March 25, 1959, on request of the employer, the board ordered the case reopened and scheduled a rehearing before its referee. After numerous additional hearings on the issue of claimant's status as a general employe or an independent contractor, the board again found that claimant was a general employe, retired by his company on October 31, 1957, and again reversed the decision of the referee.

The company, thereupon, appealed to this Court, and upon stipulation filed on August 19, 1960, we ordered the record remanded to the board "for the purpose of taking additional testimony and for further study and consideration in the light thereof, and the issuing of a new decision consistent therewith." Com-

plying with that order the board, on October 11, 1960, again remanded the case to a referee for further hearing "To receive testimony on claimant's separation, availability and any other relevant testimony." Several more hearings were held, and finally, on November 3, 1961, the board vacated its decision of May 19, 1960, and made different findings, the most important of which was that claimant had been retired at his own request rather than by the company, and for that reason was ineligible for benefits. However, it did not decide the issue that had occupied its attention for the several preceding years and filled so very much of this voluminous record, viz., was claimant an independent contractor or a general employe; nor did it decide the issue of his availability for work. Thus we have before us, in this appeal, only the question of his separation.

We are mindful of the many decisions to the effect that the board is the arbiter of the facts, and that its findings are conclusive and must be sustained if the record contains competent and substantial evidence to support them.

Also, the record must be reviewed in a light most favorable to the party in whose favor the board found, giving that party the benefit of every inference which can be logically and reasonably drawn from the competent evidence, *Sledziowski Unemployment Compensation Case*, 195 Pa. Superior Ct. 337, 171 A. 2d 546, and it is the duty of the board to pass on the credibility of the witnesses and the weight of their testimony. *Cook Unemployment Compensation Case*, 194 Pa. Superior Ct. 652, 169 A. 2d 594.

The burden rests upon claimant to establish that he is entitled to benefits, *Scheibel Unemployment Compensation Case*, 189 Pa. Superior Ct. 248, 150 A. 2d 150, and no burden rests on the employer to establish ineligibility. *Stover Unemployment Compensation Case*, 196 Pa. Superior Ct. 92, 173 A. 2d 678; *Oluschak Un-*

*employment Compensation Case,* 192 Pa. Superior Ct.
255, 159 A. 2d 750; *Otto Unemployment Compensation
Case,* 189 Pa. Superior Ct. 489, 151 A. 2d 795; *Davis
Unemployment Compensation Case,* 187 Pa. Superior
Ct. 116, 144 A. 2d 452.

Claimant first contends that his retirement under
the pension plan was compulsory, and that the finding
of the board that it was "optional" is in error. The
plan provides that "The *normal\** retirement date of a
member who has attained his 56th birthday but who
has not attained his 61st birthday at date of entry
into the plan is the tenth anniversary of the plan fol-
lowing entry;" also that when a member attains his
normal retirement date he shall retire and receive an
annuity; but it also provides that in the event that a
member, with the consent of the company, is continued
in active service beyond his normal retirement date no
further contribution shall be made by the member or
the company. Although this claimant should have re-
tired *normally* on July 1, 1957, he was continued in
active service, with the consent of the company, until
September 1, 1957, when he went to the hospital, fol-
lowing which he was kept on the company rolls as an
employe entitled to sick pay until October 31, 1957.
This issue would appear academic in this case in the
light of the opinion of our Supreme Court in *Gianfelice
Unemployment Compensation Case,* 396 Pa. 545, 153
A. 2d 906, holding that the factual matrix at the time
of separation should govern. Thus our attention should
be directed to the events leading up to the change in
claimant's status from an employe to a pensioner that
occurred on November 1, 1957.

Following the rules previously stated the record of
competent evidence is devoid of support for the board's
finding that claimant's retirement was due to his own

---

\* Emphasis supplied.

request. He denies that such a request was ever made and every witness offered by the employer admits that none was ever received. What apparently occurred here is that the employer converted mere inquiries as to the benefits of retirement into a request for same. This is clearly evident in this case from the testimony of Mr. Dan Iatarolla, employer's district manager, through whom Mr. Urban's supposed request for retirement was transmitted to Mr. Tegler, the vice-president then in charge of such matters, but who had no direct contact with Mr. Urban.

"Q. Did he initiate any action with you concerning his going into retirement? A. This I know mostly through the field manager. Personally he did not discuss it with me. Q. How came it to pass that he was pensioned? A. Well on several occasions he did come into the office and inquire about what amount of pension he would be entitled to if he would retire, which suggested to me that he did want to retire. What else could you think? Q. Did he ask you specifically to retire? A. No. Q. What was the occasion of his receiving a retirement check terminating his employment? A. The fact that he mentioned what he would receive as far as retirement and the fact that he wasn't able to come back to work. I think that would be suggestion enough. Q. Did you notify the company then that he requested to retire? A. I *assumed* as much, what else." (Emphasis supplied)

Mr. Raymond Christinzio added nothing more. He stated, "We talked about his health and he said he didn't feel too good and he thought he would like to retire.

"Q. Did you ever suggest he go on pension? A. No, I didn't, but he always asked how much he would get if he went on pension. I said, 'I can't tell you that. You will have to refer that to the manager of the district.' . . . Q. Did you order this retirement? A. I did not."

The district manager referred to by Mr. Christinzio was not called but the division manager, Mr. Avicolli, testified:

"A. Yes. In the early part of October of 1957, on one of my regular visits to the Kensington District, in the course of conversation with Mr. Christinzio, the Field Manager, he mentioned the fact that Mr. Urban wanted to retire. Q. What did you do about that? A.Well, at that time I did nothing because since normally those requests come through the Manager, I may have used a stock answer to that by telling him to take the matter up with his Manager. Q. Did he take it up with his Manager to your knowledge? A. He evidently did because a couple days after Mr. Iatarolla called me and told me Mr. Urban has asked to retire through Mr. Christinzio and would I make arrangement to effect that very thing. Q. And did you do so? A. Yes."

Unquestionably Mr. Urban, when ill in 1955 and 1956, at which time he was not eligible for his pension, inquired as to the benefits to be derived from same, as well as from social security; and there is no doubt that in 1957, when he had to be hospitalized, he again talked further about it, but that is as far as his consideration of the matter went. It did not develop into a request for retirement. Much is made of the fact, both by the board and by the employer, when he received his first pension check which was not accompanied by a letter of explanation that he did not ask why he was being retired or offer to return to work. To conclude from his failure to do so that it was the result of his acceptance of voluntary retirement is unreasonable; it is more reasonable to conclude that he thought it was involuntary, since he did not request it. In this connection it is interesting to recall that the company described it as involuntary when they first replied to the Bureau of Employment Security on November 7, 1957. It subsequently tried to explain this alleged improper

use of the term in a later communication dated May 1, 1959, addressed to Mr. Shapiro, a supervisor for the bureau, but it is not convincing. In fact, it indicates that the retirement was initiated by the employer because ". . . his poor health dictated that he retire, and because of the condition of his health, his best interest would be served by acceding to his request for retirement." Unfortunately for the employer, as has been pointed out, there had been no request for retirement received from the claimant. This case is distinguishable from *Mayer Unemployment Compensation Case*, 192 Pa. Superior Ct. 504, 161 A. 2d 660, wherein there is to be found some evidence (although equivocal—for which reason the writer of this opinion dissented) that a request for retirement had been made by claimant. No request is present herein.

This case was tried originally on the issue of financial ineligibility, which has never been finally determined. It should not be resolved on this issue of voluntary retirement since the decision of the board cannot be sustained on that basis.

There is also another issue to be resolved. That is the issue of availability of claimant for work. There is much evidence in the record on this point, some of which indicates that he may not have been physically able to work during some of the weeks for which he is seeking unemployment benefits.

I would decide in this appeal that the board's finding that claimant voluntarily separated himself from his employment for the purpose of retirement is not supported by the record and should be overruled; and I would remand this case to the Unemployment Compensation Board of Review for further hearing, consideration and decision upon the other questions in issue. Therefore, I respectfully dissent.

RHODES, P. J., and FLOOD, J., join in this dissenting opinion.