Aheimer Unemployment Compensation Case.
General Motors Corporation, Fisher Body
Division, Appellant, *v.* Unemployment
Compensation Board of Review.

Argued April 13, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*John G. Wayman*, with him *Scott F. Zimmerman*, and *Reed, Smith, Shaw & McClay*, for employer, appellant.

*Sydney Reuben*, Assistant Attorney General, for Unemployment Compensation Board of Review, appellee.

*Paul A. Simmons*, for intervenors, claimants.

OPINION BY WATKINS, J., June 16, 1967:

This is an appeal in an unemployment compensation case by the employer-appellant, General Motors Corporation, Fisher Body Division, from the decision of the Unemployment Compensation Board of Review that awarded benefits to Warren C. Aheimer, one of

the claimants-intervenors. There are 199 employees involved and the claimant's appeal will cover all except those who instituted separate appeals.

Local 544 of the United Auto Workers Union instituted a labor dispute at the Pittsburgh plant where the claimant worked and was a member of the union. Work stopped on September 25, 1964. It is clear, as of that time and until October 24, 1964, the claimant was not entitled to benefits under §402(d) of the Unemployment Compensation Law, 43 PS §802(d), in that his unemployment was due to a labor dispute. The labor dispute was finally settled by a new national agreement on November 9, 1964. However, prior to the new national contract, on October 24, 1964, the claimant's local union and the employer, since all local issues had been settled, except as to checkoff, agreed to open the Pittsburgh plant on the basis of the old contract until the new one was executed. The claimant was recalled to work on October 24, 1964, under a work equalization sheet based on the prior agreement.

The employer had expected to recall all the employees of the Pittsburgh plant but due to matters caused by the strike, was unable to get into full production. The local union, when all employees were not called back complained about the manner of recall and insisted that the employees be recalled by seniority. The employer was not bound by contract to do this but made such an agreement with the union. The claimant was then laid off on October 28, 1964, and another employee called out in his place. The time in dispute is from October 28, 1964 to November 9, 1964.

The issue is a simple one. The employer contends that the claimant's unemployment was due to the labor dispute; the employee contends that although it is true that his original unemployment was due to a labor dispute, that disqualification ended when he was recalled to work on October 24, 1964 and that his layoff on

October 28th resulted in unemployment due to no fault of his own and that the agreement between his employer and his union concerning seniority cannot take away from him the benefits provided by law. *Warner Company v. Unemployment Compensation Board of Review (Gianfelice Unemployment Compensation Case)*, 396 Pa. 545, 153 A. 2d 906 (1959).

The Supreme Court in the *Warner* case, supra, said at page 551: "This is one reason why the collective bargaining agreement should not control in determining the eligibility of a retired employee for unemployment compensation; rather, the factual matrix at the time of separation should govern." And further at page 554: "Where a statute of the Commonwealth expresses a public policy designed to alleviate a condition of possible distress among the public or a segment thereof and explicitly proscribes waiver of the benefits of the act, no private agreement, however valid between the parties, can operate as such a waiver." The opposite principle that the employer and employee cannot agree that the employee receive benefits when the law precludes such benefits has been stated by this Court. *Gagliardi Unemployment Compensation Case*, 186 Pa. Superior Ct. 142, 141 A. 2d 410 (1958). See also: *Lybarger Unemployment Compensation Case*, 418 Pa. 471, 211 A. 2d 463 (1965).

The foundation of the claim in the instant case is that this claimant was recalled to work, so that for him, the labor dispute was ended and he would have continued to be so employed if the employee and employer, as a matter of business and union judgment, by agreement, brought about his unemployment. The agreement is quite binding between the union and the company but cannot operate to deprive the claimant of any rights to which he is entitled under the Unemployment Compensation Law. As the Supreme Court said in the *Warner* case, supra, at page 551: "Viewed in

this light, the questions here become simply (1) did Gianfelice cease working voluntarily as a matter of fact, and (2) was Gianfelice available for work thereafter? Since the answers on the record are (1) no, and (2) yes, Gianfelice is entitled to benefits."

It is true that the employer intended to call back all of the employees at the Pittsburgh plant and that the large number not recalled was because of a lack of cars equipped with racks which was the result of the labor dispute. Those not called back were idle as a result of the strike. This, however, does not apply to those called back, the claimants involved in this appeal. For this reason we agree with the claimants and the board of review that no federal question is involved, i.e., since the labor dispute for these claimants ended with their recall to work, this is not a situation where the board has enforced a law which financially supports employees engaged in a labor dispute.

The many cases cited by the appellant are inapposite or can be easily distinguished on their factual matrices. Did Aheimer cease working voluntarily as a matter of fact? The answer is clearly no. Was Aheimer available for work thereafter? The answer is clearly yes. He is entitled to benefits.

Decision affirmed.

———

DISSENTING OPINION BY WRIGHT, J.:

These claimants became unemployed on September 25, 1964, as the result of a strike at the employer's plant. The labor dispute which resulted in the strike was not settled until November 9, 1964. Because of a tentative local agreement, it was possible for the employer to undertake the resumption of partial production on October 24, 1964. Claimants were among a group of employes recalled on that date. On October 28, 1964, at the demand of the Union, the employer was

required to replace these claimants with men who had more seniority. However, the strike was still the basic cause of claimants' unemployment from October 28, 1964 until November 9, 1964, the period which this appeal concerns. In refusing to allow benefits the Referee aptly stated: "The proximate cause of their unemployment did not change since it was at their union's insistence that they be replaced". It is my view that the Board of Review erred in reversing the decision of the Referee.

The allowance of benefits in the instant case is directly contrary to two decisions of this court which are conveniently overlooked by the Board of Review, and are not mentioned in the majority opinion. In *Chappelow Unemployment Compensation Case*, 176 Pa. Superior Ct. 162, 106 A. 2d 672, a strike terminated on June 5, 1952, but the employer did not resume full operations until July 1, 1952. There were two groups of claimants. One group was comprised of employes who had been recalled on June 9, 1952, worked for a short period, and were then replaced at the Union's demand by employes with greater seniority. We denied benefits to both groups without drawing any distinction between them. A similar factual situation was presented in *Simms Unemployment Compensation Case*, 206 Pa. Superior Ct. 753, 213 A. 2d 645. The Board of Review denied benefits to all employes, including a group which had been recalled and replaced. The Board's decision was affirmed by a divided court, and allocatur was refused at 207 Pa. Superior Ct. liii. The *Chappelow* and *Simms* cases control the instant appeal and mandate reversal of the Board's decision.

The majority opinion places reliance on *Gianfelice Unemployment Compensation Case*, 396 Pa. 545, 153 A. 2d 906. However, as we pointed out in *McGowan Unemployment Compensation Case*, 208 Pa. Superior Ct. 280, 224 A. 2d 647, the *Gianfelice* case was distin-

guished and its impact restricted in *Lybarger Unemployment Compensation Case,* 418 Pa. 471, 211 A. 2d 463. Indeed, in his dissenting opinion in *Lybarger,* Mr. Justice COHEN took the position that the majority had, sub silentio, reversed the rule of the *Gianfelice* case. Speaking for the majority in *Lybarger,* Mr. Justice ROBERTS expressly stated that the language in the *Gianfelice* decision was limited to its facts. It is clearly not authority for the allowance of benefits in the case at bar, which presents an entirely different factual situation.

To summarize, the labor dispute which caused the work stoppage continued through November 9, 1964. However, one hundred ninety-nine jobs became available on October 24, 1964, and claimants were recalled on that date. Four days later, upon demand of the Union, claimants were replaced in their jobs by employes with more seniority. The replaced employes then reverted to their prior disqualification status. The controlling factor is not the identity of the persons who worked or did not work, but rather the unavailability of jobs due to the strike. The Union which demanded claimants' replacement was acting as the bargaining representative of all of the employes, including the claimants. Actions of the Union affecting employment must be taken into account as part of the factual matrix and cannot be ignored. If claimants had not been replaced, the employes who replaced them would concededly not have been entitled to benefits. Claimants should not be in a better position. It was still the same lack of work for the same reason.

ERVIN, P. J., joins in this dissenting opinion.