238

Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania *v.* Robert Fabric, Appellant.

Argued February 5, 1976, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Raymond M. Larizza,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, April 2, 1976:

This is an appeal by Robert Fabric from an order of the Unemployment Compensation Board of Review, dated June 6, 1975, which reversed a referee's determination and denied benefits. We view the only real issue as whether the Board erred in denying all benefits to Fabric when he voluntarily left a job which paid less than his partial benefit credit. We hold that the Board erred as a matter of law and reverse.

Fabric was employed by the United States Postal Service until February 1, 1974, at which time he applied for and began receiving unemployment benefits. On his own initiative, Fabric responded to an advertisement for part-time employment as a cashier in the William Penn Pipe Shop. Fabric was informed by William Penn that he would be hired for eight hours of work per week at $2.25 per hour, the total wages being $18.00 per week. Fabric's partial benefit credit under Section 404(d) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §804(d), was $20.00, which means that Fabric was free to earn up to $20.00 per week without suffering a reduction in his weekly benefits.

After reporting to an "instructor," whose function was to orient new employes of William Penn, Fabric was given the first information that suggested the job in the pipe shop might involve some personal risk. During his orientation session Fabric was told that the shop had experienced difficulty with customers and cashiers being harassed. He was also informed that a blackjack was provided by management. Fabric had been told by a management representative that he might be assigned to a location other than the one at which his orientation was taking place, and Fabric asked the instructor if conditions would be safer at the other shop. The instructor responded that, to the contrary, conditions would probably be worse because the other location remained open all night and

contained pinball machines (which apparently attracted unsavory characters).

Fabric worked one shift from midnight to 8:00 A.M. and quit his job with William Penn. His UC-990 form, which was admitted into evidence, contained the following handwritten statement by Fabric: "I left [the cashier's job] because the wages wasn't worth the risk of possible injury to myself. The risk was there to be sure." [sic]

The Board denied benefits on the basis of Section 402(b)(1), 43 P.S. §802(b)(1), concluding that Fabric had left the cashier's job voluntarily and without cause of a necessitous and compelling nature. Fabric contests this conclusion,[1] but he argues that even if sufficient cause for his separation is found to be lacking, the Board should only have denied benefits to the extent which his earnings at the pipe shop would have warranted a reduction. The effect of this argument is that no benefits should be denied, since Fabric was only guaranteed $18.00 per week by William Penn and his partial benefit credit was $20.00, i.e., he was permitted to earn up to $20.00 per week without a reduction in benefits.

The Board maintains that the "factual matrix" at the time of separation controls the question of eligibility, *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 153 A.2d 906 (1959), and that if claimants are able to quit part-time jobs without jeopardizing benefits "the obvious abuse of the system would be evident."

We agree that the unemployment compensation system would be open to abuse if a claimant could leave part-time employment and thus increase his weekly benefits and impose some burden on the fund. This cannot occur, however, when the claimant who leaves part-time employ-

---

1. Our examination of the record indicates that while a contrary conclusion may have been possible, the decision of the Board with respect to this issue is adequately supported and free from error.

ment is earning less than his partial benefit credit, as was Fabric. Further, a claimant such as Fabric is under no obligation to seek employment which pays less than his partial benefit credit.

With respect to the "factual matrix" at the time of Fabric's separation, we note that Section 402(b)(1), 43 P.S. §802(b)(1), only disqualifies a claimant whose "unemployment" is due to voluntarily leaving work without cause of a necessitous and compelling nature. The term "unemployment" is defined by Section 4(u) of the Act, 43 P.S. §753(u) as follows:

> "An individual shall be deemed unemployed . . . (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit."

We read this provision, together with Section 402 (b)(1), to require that the Board establish that a claimant's actual benefits would be increased by virtue of the loss of a part-time job. In other words, the part-time job must have yielded income in excess of the partial benefit credit (and thus decreased the amount of the weekly benefits payable) before a claimant can be denied any benefits because of a voluntary separation. Under the statutory definition, a claimant is only "unemployed" due to his voluntary separation to the extent of the wages he was earning; and we see no provision in the Act which requires or authorizes the Board to deny *all* of the claimant's benefits.

The referee's decision in the instant case was in accord with the view we have just expressed. He cited an unreported decision of the Board, *Claim of Melissa Veres,* No. B-122853, August 27, 1974, as authority for deducting only Fabric's $18.00 per week earnings from the total of Fabric's weekly benefit rate and partial benefit credit.[2]

---

2. Any question of the propriety of our considering the *Veres* adjudication should be removed by virtue of the fact that, in the

Fabric has provided a copy of the *Veres* adjudication and the Board has not asserted that this copy is not an accurate reproduction. An examination of *Veres* indicates that the Board did, in fact, deduct only an amount equal to the wages the claimant would have earned through part-time employment. In *Veres* the Board relied upon *Snyder Unemployment Compensation Case,* 194 Pa. Superior Ct. 622, 626, 169 A.2d 578, 580 (1961), where the Court made the following disposition:

> "We feel that the record in this case should be remanded to the board so that the board may make an award of partial unemployment compensation, taking into consideration the unemployment compensation of $35.00 per week, if the appellant had no employment, and the sum of $23.94 being the net amount appellant would receive *had she accepted the partial employment* offered to her by her employer." (Emphasis added.)

The Board attempts to distinguish both *Snyder* and its own action in *Veres* by pointing out that both cases involved a refusal to accept part-time employment rather than a voluntary termination without sufficient cause. This is a distinction without a difference. Both Section 402(a) and Section 402(b)(1) are general ineligibility provisions which are routinely applied in appropriate cases. The Board has pointed to nothing inherent in Section 402(b)(1) which would render the application of the procedure followed in *Snyder* and *Veres* illogical, unwise, or contrary to the purposes of the Act.

In summary, we hold that when a claimant voluntarily leaves part-time employment within the meaning of Section 402(b)(1) of the Act, 43 P.S. §802(b)(1), he is

instant case, both the referee and the Board cited and discussed this decision. We commend Fabric's counsel for making the effort to provide this Court with relevant material which is not otherwise readily available.

rendered ineligible for further benefits only to the extent that his benefits were decreased by virtue of his part-time earnings. Accordingly, we

### ORDER

AND NOW, this 2nd day of April, 1976, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated June 6, 1975, is reversed, and the order of the referee dated March 27, 1975, awarding benefits to Robert Fabric is reinstated.