Marcus G. Banks, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs April 7, 1983, to President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*R. Michael Owens*, for petitioner.

*Charles G. Hasson*, Acting Deputy Chief Counsel, with him *Richard L. Cole, Jr.*, Chief Counsel, for respondent.

OPINION BY JUDGE BARBIERI, June 21, 1983:

This is an appeal from an order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision which found that Marcus G. Banks (Claimant) was disqualified from receiving unemployment compensation benefits by the provisions of Sections 401(d)(1) and 402(b) of the Unemployment Compensation Law (Law),[1] 43 P.S. §§801(d)(1) and 802(b). The Board also affirmed the referee's conclusion that six weeks of benefits Claimant had received were fault overpayments within the intendment

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§801(d)(1) and 802(b).

of Section 804(a) of the Law, 43 P.S. §874(a). We will remand.

Claimant was last employed as a shuttle car driver for National Car Rental System, Inc. (National) where he worked part time for approximately one month prior to his last day of work, December 9, 1980, when he voluntarily terminated his employment. While employed at National, Claimant applied for, and began to receive, unemployment compensation benefits. Claimant qualified for these benefits since his weekly earnings at National apparently did not exceed his partial benefit credit of $65.00 per week.[2] *See* Sections 4(m.1) and 404(d) of the Law, 43 P.S. §§753(m.1) and 804(d). The Office of Employment Security (Office) subsequently received notice, however, in the form of a "Low Earnings Report" submitted by National, that Claimant was paid on a per trip basis, and was free to schedule as many trips as he could between the hours of 7:00 A.M. and 11:00 P.M. The Office, believing this information to be disqualifying, then terminated Claimant's benefits and assessed him for fault overpayments for the six weeks of benefits he had received. Claimant appealed this determination to a referee, and after an initial hearing, and a subsequent remand hearing, the referee concluded (1) that Claimant's failure to pursue full time employment at National indicated that he was not able and available for work and was thus not entitled to benefits under the provisions of Section 401 (d)(1) of the Law, (2) that Claimant was additionally disqualified from receiving benefits by the provisions

---

[2] Although Claimant testified, and the Board so found, that his weekly earnings never exceeded his partial benefit credit, we note that pay stubs, which are part of the record before us, seem to indicate that at least during one of the weeks in question his earnings did exceed his credit. Since neither of the parties before us has raised this issue, however, we will not address it.

of Section 402(b) of the Law since he had terminated his employment without cause of a necessitous and compelling nature, and (3) that the benefits Claimant had received were fault overpayments within the intendment of Section 804(a) of the Law since Claimant "withheld information." The Board subsequently affirmed this decision, and the present appeal followed.

Before this Court, Claimant initially alleges that the Board improperly failed to consider whether his failure to pursue full time employment at National constituted a refusal of "suitable" employment as that term is defined in Section 4(t) of the Law, 43 P.S. §753(t). We agree.

Section 401(d).(1) of the Law states that "[c]ompensation shall be payable to any employe who is or becomes unemployed, and who—(d)(1) [i]s able to work and available for *suitable* work. . . ." (Emphasis added.) Section 4(t) of the Law, in turn, reads as follows:

"Suitable work" means all work which the employe is capable of performing. In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety and morals, his physical fitness, prior training and experience, and the distance of the available work from his residence. The department shall also consider among other factors the length of time he has been unemployed and the reasons therefor, the prospect of obtaining local work in his customary occupation, his previous earnings, the prevailing condition of the labor market generally and particularly in his usual trade or occupation, prevailing wage rates in his usual trade or occupation, and the permanency of his residence. . . .

In the present case, Claimant clearly testified that he had not attempted to work full time at National since he did not consider the work he performed there to be suitable full time employment in light of his fifteen years of experience as a skilled drill press operator, the disparity in the pay rate between his last full time job at Leeds and Northrup and his job at National, and the length of time of his unemployment. Despite Claimant's clear testimony in this regard, however, the referee prevented Claimant from presenting any evidence concerning his prior employment, and failed to address the issue of suitability. As a result, we are precluded from exercising our appellate review and, accordingly, must remand for findings on the issue of suitability. *Shay v. Unemployment Compensation Board of Review*, 424 Pa. 287, 227 A.2d 174 (1967).

In so holding, we recognize, as Claimant states in his brief, that the Board also erred by finding Claimant to be additionally disqualified from receiving benefits by the provisions of Section 402(b) of the Law. As we noted in *Unemployment Compensation Board of Review v. Fabric*, 24 Pa. Commonwealth Ct. 238, 354 A.2d 905 (1976), Section 402(b) only disqualifies a claimant whose "unemployment" is due to voluntarily terminating employment without cause of a necessitous and compelling nature. Section 4(u) of the Law, 43 P.S. §753(u), in turn provides that "[a]n individual shall be deemed unemployed . . . (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit." Accordingly, we concluded in *Fabric* that

> [w]e read this provision together with Section 402(b)(1), to require that the Board establish that a claimant's actual benefits would be increased by virtue of the loss of a part-time job.

In other words, the part-time job must have yielded income in excess of the partial benefit credit (and thus decreased the amount of the weekly benefits payable) before a claimant can be denied any benefits because of a voluntary separation.

*Id.* at 241, 354 A.2d at 907. Since the Board specifically found that Claimant's income at National never exceeded his partial benefit credit, it erred as a matter of law by concluding that Claimant was disqualified from receiving benefits by the provisions of Section 402(b).

Finally, Claimant alleges that the Board erred by concluding that the six weeks of benefits he received were "fault" overpayments. We once again must agree.

"The word 'fault' within Section 804(a) connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches." *Patrick v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 238, 241, 398 A.2d 1095, 1097 (1979). An active misrepresentation may constitute such an act. *Beres v. Unemployment Compensation Board of Review,* 38 Pa. Commonwealth Ct. 457, 393 A.2d 1073 (1978); *Stormer v. Unemployment Compensation Board of Review,* 32 Pa. Commonwealth Ct. 220, 378 A.2d 1037 (1977). In the present case, the Board concluded that the payments in question were "fault" overpayments since Claimant "withheld information," presumably the information that he could work longer hours at National. There is absolutely no evidence of record, however, indicating that Claimant was ever *asked* if he could work longer hours at National, and in fact the issue of whether the benefits Claimant received were "fault" overpayments was not even discussed at the referee's hearing. Since there is no evidence of record indicating that Claimant

166

made any misrepresentations, we believe that the Board erred by concluding that the benefits he received were "fault" overpayments within the intendment of Section 804(a).

ORDER

Now, June 21, 1983, the order of the Unemployment Compensation Board of Review dated July 15, 1981, Decision No. B-197244, is reversed, and the record in this case is hereby remanded to the Board for further proceedings consistent with the opinion above. Jurisdiction relinquished.