Jones & Laughlin Steel Incorporated, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 1, 1984, before Judges ROGERS, PALLADINO and BARBIERI, sitting as a panel of three.

*Daniel R. Minnick,* for petitioner.

*Charles Hasson,* Deputy Chief Counsel, with him, *James K. Bradley,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE BARBIERI, June 13, 1984:

Jones & Laughlin Steel, Inc. (Employer) appeals here from three orders[1] of the Unemployment Compensation Board of Review (Board) granting unemployment compensation benefits to sixty-one former employees of Employer's Vesta No. 4 mine. We will affirm in part and remand.

The facts in this case are undisputed. In March of 1979 Employer, pursuant to the procedures mandated by a collective bargaining agreement, selected a two-week paid vacation period extending from Saturday, July 14, 1979 until Saturday, July 28, 1979 for employees at its Vesta No. 4 mine, and paychecks for this period were subsequently issued on July 6, 1979.

---

[1] The Unemployment Compensation Board of Review, for reasons which are not apparent from the record before us, issued a decision granting benefits to fifty-nine claimants, and two separate decisions granting benefits to two additional claimants. The latter two decisions had no findings of fact and were not based on separate hearings. They simply indicated that the legal issues were the same in each case as those in the decision covering the fifty-nine claimants, and hence that benefits would be granted.

On Wednesday, July 11, 1979 Employer informed its employees that the Vesta No. 4 mine would be permanently closed as of July 30, 1979, and that no further production would be scheduled for the mine so that employees, in the two days preceeding the commencement of their vacation period, could apply for employment in Employer's other mines pursuant to the procedures specified in their collective bargaining agreement. Sixty-one employees subsequently filed for unemployment compensation benefits for the benefit weeks commencing July 14 and July 21, 1979, and after considering these claims the Bureau of Employment Security granted benefits. On appeal, however, the referee, finding as a fact that the vacation pay the claimants received for these two weeks exceeded their weekly benefit rate plus their partial benefit credit, concluded (1) that the claimants were rendered ineligible for benefits by the vacation pay offset provisions of Section 404(d)(ii) of the Unemployment Compensation Law (Law),[2] and (2) that the claimants did not fall within the ambit of the exception enunciated in Section 404(d)(ii) to that section's vacation pay offset provisions since the claimants had not been "permanently or indefinitely separated from [their] employment" during this two week period. On appeal the Board, after taking additional evidence, concluded, however, that the claimants had been "permanently or indefinitely separated from [their] employment," and hence did not have to have their benefits offset by the vacation pay they received in excess of their partial benefit credits. The Board accordingly granted benefits, and the present appeal followed.

Before this Court Employer asserts that the Board erred as a matter of law by concluding, based on the facts of this case, that the claimants were "perma-

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §804(d)(ii).

nently or indefinitely separated from [their] employment" within the intendment of the vacation pay offset exception expressed in Section 404(d)(ii) of the Law. With respect to one of the claimants, Terry Thomas Martina, we disagree. With respect to the remaining sixty claimants, however, we are, after carefully reviewing the record, unable to answer this question, and hence shall have to remand for the making of additional findings of fact.

Section 404(d)(ii) of the Law, prior to its 1980 amendments, provided in pertinent part that

[n]otwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to the first day of July, one thousand nine hundred seventy-four, shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of . . . (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employe who is permanently or indefinitely separated from his employment. . . .

In *United States Steel Co. v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 206, 303 A.2d 852 (1973) we indicated the circumstances in which a claimant was to be considered indefinitely separated from his employment for the purposes of Section 404(d)(ii). We stated there that

[t]he term "indefinite" has been defined in Webster's Third New International Dictionary as "being of a nature that is not or cannot be clearly determined: not precise . . . having no exact limits: indeterminate in extent or amount: not clearly fixed. . . ." When, as here, an employee is separated from his job for a period which is indeterminate in extent and for which the time concerned is not clearly fixed,

it seems clear that he has been "indefinitely separated" from his employment. It would also appear to us that the "indefinite" nature of a separation can be ascertained either from the possibility that the employee will not be called back to work at all or from the lack of knowledge as to when any recall may occur.

*Id.* at 209, 303 A.2d at 855.

In the proceedings below, Ralph Boden, Employer's Employee Supervisor, testified that after the employees at the mine who desired to do so filled out applications for employment at Employer's other mines, these applications were reviewed to determine which employees under the terms of the collective bargaining agreement were eligible to be transferred, and that certified letters were then sent on July 19, 1979 informing those employees who were eligible for transfer which mines they could be transferred to. Mr. Boden further testified that those miners who accepted the transfers commenced working at these other mines upon the expiration of the vacation period, or were retained temporarily on the crew closing the Vesta No. 4 mine pending their transfer to new mines. Mr. Martina, the claimant who was treated as the "designated" claimant in the mass appeals below, testified that upon leaving work on July 11, 1979 he had no idea if he had sufficient seniority to be transferred to a new mine, that he never received any notification that he was eligible to be transferred, and that he was able and available for suitable employment during the benefit weeks at issue. Unfortunately, however, no information was elicited as to when and if any of the other claimants received notification that they would be transferred to new mines, and no findings were made by the Board on this issue. We do note, however, that Employer submitted a list of names of transferred employees to the Bureau of Em-

ployment Security which includes the names of many of the sixty-one claimants awarded benefits below.

With respect to the claimant, Mr. Martina, we believe that the Board correctly concluded that he was "indefinitely" separated from his employment during the benefit weeks in question for the purposes of Section 404(d)(ii). Although Employer asserts that under the terms of the collective bargaining agreement the employees of the mine could have technically been called back to work on Sunday, July 29, 1980, the fact remains that they were not called back to work and were in fact told that there would be no further production at the mine. It is the actual factual situation at the time of separation, of course, and not the terms of a collective bargaining agreement, which determine eligibility for benefits. *Gianfelice Unemployment Compensation Case*, 396 Pa. 454, 153 A.2d 906 (1959).

Similarly, we do not believe that Employer's decision to delay the actual work on the closure of the mine until after the vacation period is significant since this decision did not alter the fact that employees who would not be called back to work had no prospect of future employment after July 11, 1979.

Finally we note that the fact that certain fringe benefits may have been available to employees after July 11, 1979 does not, in our view, affect our conclusion that mine employees, such as Mr. Martina, who had no prospect of further employment after July 11, 1979, were indefinitely separated from their employment after that date.

Turning to those claimants who received notification during the benefit weeks at issue here that they would have employment on the crew closing the Vesta No. 4 mine or at one of Employer's other mines, we believe that these claimants must have their benefits offset by vacation pay received in excess of their partial benefit credits for those claim weeks in which they

had actual notice that they would be returning to work. As we held in *United States Steel Corp. v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct. 445, 368 A.2d 1319 (1977), where claimants are laid-off for a fixed time period the exception to the vacation pay offset provision of Section 404(d)(ii) is not applicable. Unfortunately, however, because of the procedure utilized in the mass appeals below we are unable to determine which of the claimants, other than Mr. Martina, did or did not receive notice that he would be returning to work for Employer or when. We therefore will remand this case to the Board so that findings can be made on this issue, and so that benefits can be awarded or denied accordingly.

Finally we note that we find no merit in Employer's contention that it should be afforded the opportunity to present additional evidence on remand on the question of whether the claimants who were awarded benefits below were "able to work and available for suitable work" within the intendment of Section 401(d) of the Law, 43 P.S. §801(d), during the benefit weeks at issue here. The claimants established a prima facie case of availability for suitable work by showing that they registered for work each week, and the burden then shifted to Employer to present evidence establishing that they were unavailable. *Galla v. Unemployment Compensation Board of Review*, 62 Pa. Commonwealth Ct. 238, 435 A.2d 1344 (1981). Employer presented no such evidence, however, and we accordingly do not believe that Employer should be afforded a second opportunity to present such evidence on remand.

ORDER

Now, June 13, 1984, the orders of the Unemployment Compensation Board of Review at Decision Nos. B-192936-B, B-192937-B, and B-192938-B, each dated

June 24, 1981, are affirmed only insofar as they award benefits to Terry Thomas Martina, and are otherwise vacated, and the records therein are hereby remanded to the Board for further proceedings consistent with the opinion above. Jurisdiction relinquished.