### 505 A.2d 1101

Gerald F. Whitling, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 15, 1985, before Judges MAC-PHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

. · *Robert B. McGuiness*, with him, *James Bukac*, for petitioner.

*Donna M. Stanek*, with her, *Charles G. Hasson*, Acting Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, March 7, 1986:

Gerald F. Whitling (petitioner) petitions for review of the order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision ruling him financially ineligible to receive benefits, pursuant to Section 404 of the Unemployment Compensation Law (Act).[1]

The facts in this case are not in dispute. The petitioner was last employed with Wade E. Simons (Simons), and that employment ended on October 1, 1983.[2] He filed an Application for Benefits, effective April 29, 1984, thereby establishing the calendar year of 1983 as his base year.[3] During his base year, he

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §804.

[2] The petitioner's separation from Simons is not an issue here.

[3] Section 4(a) of the Act, 43 P.S. §753(a), defines "base year" as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Section 4(b), 43 P.S. §753(b), defines "benefit year" as "the fifty-two consecutive week period beginning with the day [an] 'Application for Benefits' is filed. . . ."

worked only for Simons, earning total base year wages of $5646.00, with high quarterly earnings of $3690.00. During that base year he had also received $331.84 in suppplemental unemployment benefits (SUB pay) under a plan established by agreement between the Oilwell Division, United States Steel Corporation (Oilwell Division), a former employer, and the United Steelworkers of America (union).

The administrative authorities ruled that the petitioner's SUB pay did not constitute wages under the Act and, therefore, could not be utilized in the determination of his financial eligibility. Without the SUB pay, however, the petitioner's total base year wages would be insufficient to establish financial eligibility.[4]

On review, the petitioner alleges that the Board erred legally in excluding SUB pay from his base year wages and, alternatively, that, if the Act is interpreted to so exclude SUB pay, his due process and equal protection rights have been thereby denied. We will address these questions in the order presented.

In reviewing the pertinent statutory language, we find that Section 4(x) of the Act[5] defines "wages" as "all remuneration . . . paid by an employer to an individual with respect to his employment. . . ." Section 4(l)(1) of the Act[6] defines "employment" as "all personal service performed for remuneration. . . ." And, although the Act does not define "remuneration," that term has been judicially defined to mean "payment for services performed." *Gianfelice Unemployment Compensation Case*, 396 Pa. 545, 555, 153 A.2d 906, 911 (1959), and *Beistle Company v. Unem-*

[4] *See* Section 404(e)(1) of the Act, 43 P.S. §804(e)(1), the Table Specified for the Determination of Rate and Amount of Benefits, and the "step down" provisions of Section 404(a)(3), 43 P.S. Section 804(a)(3).

[5] 43 P.S. §753(x).

[6] 43 P.S. §753(l)(1).

*ployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 205, 207, 457 A.2d 1029, 1030 (1983).

While the Appellate Courts of our Commonwealth have not previously faced the question presented here, we have considered analogous cases under the foregoing statutory provisions.

An employer's provision of salary-continuation payments made on account of a claimant's disability were held not to constitute wages under Section 4(x) in *Karamanian v. Unemployment Compensation Board of Review,* 46 Pa. Commonwealth Ct. 163, 405 A.2d 1364 (1979), because such payments were not made in consideration of personal service.

In *McAnallen v. Unemployment Compensation Board of Review,* 86 Pa. Commonwealth Ct. 77, 483 A.2d 1057 (1984), we held that sick and accident benefits paid to the claimant by the employer, and the claimant's National Guard pay, were not paid with respect to employment. Section 1002(8)[7] of the Act expressly excludes the National Guard service from the definition of "employment", and we followed the *Karamanian* analysis with regard to the sick and accident benefits. We concluded, therefore, that funds from neither source could be utilized to qualify the claimant financially.

Most recently, in *Swackhammer v. Unemployment Compensation Board of Review,* 86 Pa. Commonwealth Ct. 293, 484 A.2d 851 (1984), again relying on *Karamanian,* we held that workmen's compensation benefits, paid on account of the claimant's disability and not in consideration of personal services rendered, were not wages within the purview of the Act.

Although it is true that the petitioner's SUB pay was a benefit of his employment with Oilwell Division, the disallowed funds in *Karamanian, McAnallen* (ex-

---

[7] 43 P.S. §892(8).

cluding, of course, the National Guard pay) and *Swackhammer* also would not have been paid but for the existence of an employer-employee relationship. Consequently, we believe that, inasmuch as the petitioner's SUB pay was paid on account of his unemployment, such payments were, necessarily, not made in consideration for personal services.

Moreover, we do not believe that *General Teamsters Union Local 249 v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 456, 459 A.2d 1363 (1983), is, as the petitioner contends, analogous here. *General Teamsters* involved payments made by the union to shop stewards to reimburse those union officials for wages lost when they were conducting union business during work hours. Those payments were held to constitute remuneration from the union to the shop stewards for services those individuals performed for the union.

We conclude, therefore, that the Board committed no legal error in excluding the petitioner's SUB pay from his base year wages.

Turning to the petitioner's due process[8] and equal protection arguments,[9] we note that the test for determining whether or not a challenged social or economic law deprives someone of substantive due process, and for evaluating an equal protection challenge, where, as here,[10] no fundamental interest or a suspect classification is involved, is whether or not the legislation

---

[8] The petitioner has not specifically stated whether his alleged due process denial was substantive or procedural in nature, inasmuch as our review of his brief indicates that he alleges no procedural deprivation, we will address this argument as a substantive due process challenge.

[9] Other than a superficial denial of any constitutional violations in its Summary of Argument section, the Board's brief does not respond to the petitioner's constitutional argument.

[10] The petitioner has raised no such claims here.

has a rational relationship to a valid state objective. *See Latella v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 14, 459 A.2d 464 (1983), and *Novack v. Unemployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 148, 457 A.2d 610 (1983).

Our Supreme Court has approved the Act's use of the base year earnings test to reflect a claimant's general attachment to the labor market as having a rational relationship to a legitimate governmental objective. *Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107 (1983), *cert. denied,* 466 U.S. 952. We view the requirement that base year wages must arise from one's personal service to an employer within the base year as also having a clear relationship to the legitimate governmental objective of financially assisting "employees" unemployed through no fault of their own as provided in the Act's Declaration of Public Policy.[11] We discern no constitutional violations, therefore, in excluding money not paid in consideration for personal services performed, such as the SUB pay here involved, from the calculation of the qualifying base year wages.

Accordingly, finding no errors of law or constitutional violations, we will affirm the Board's order.

ORDER

AND Now, this 7th day of March, 1986, the order of the Unemployment Compensation Board of Review, Decision No. B-233529, is affirmed.

---

[11] Section 3 of the Act, 43 P.S. §752.