591 A.2d 1186

**ALLEGHENY LUDLUM, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT
COMPENSATION BOARD OF REVIEW,
Respondent.**

**ALLEGHENY LUDLUM CORPORATION, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 1, 1991.

Decided May 24, 1991.

Petition for Allowance of Appeal Granted Dec. 10, 1991.

Stephen B. Spolar, for petitioner.

Richard E. Gordon, for intervenors.

No appearance for respondent.

Before CRAIG, President Judge, and COLINS, PALLADINO, McGINLEY, SMITH, PELLEGRINI, and KELLEY, JJ.

COLINS, Judge.

Allegheny Ludlum Corporation (employer) petitions for review of two orders of the Unemployment Compensation Board of Review (Board), both reversing the referees' decisions and allowing benefits under the provisions of Sections 401, 4(u) and 404(d)(1) of the Unemployment Compensation Law (Law).[1]

Charles E. Thorpe, Jr. and William Covey, III (intervenors in this action) are representatives of a group of bargaining unit employees at Allegheny Ludlum Corporation. A collective bargaining agreement is in force between employer and the United Steelworkers of America, which includes a Supplemental Unemployment Benefit Plan (Plan). The Plan contains provisions for supplemental unemployment benefits (SUB) and short week benefits (SWB). The SWB provision, the subject of this controversy, specifies that qualified employees (those with two or more years of continuous service) will receive 32 hours pay for weeks in which they are involuntarily scheduled to work some, but fewer than 32 hours. SWB payments are made out of the Plan trust fund (fund) established under the Internal Revenue Code for both SUB and SWB, which is funded solely by employer contributions, and are subject to tax by the Internal Revenue Service.

Claimant Covey worked eight hours during the week ending May 6, 1989, for which he received gross wages of $86.00. Because he worked less than 32 hours, and was

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 801, 753(u) and 804(d)(1).

otherwise eligible for SWB, he was provided payment from the fund for an additional 24 hours in the amount of $346.16.

During the same week in question, claimant Thorpe worked nine hours, for which he earned gross wages of $107.28. In addition to his earnings, he was paid SWB from the fund for an additional 23 hours in the amount of $392.42.

The other 38 claimants involved in this action also worked less than 32 hours that week and were paid SWB payments. Claimants Thorpe and Covey, along with the 38 other claimants, filed for unemployment compensation benefits with the Office of Employment Security (OES), which were denied for Thorpe July 6, 1989 and for Covey August 25, 1989. Both Thorpe and Covey appealed. Contemporaneously with the Thorpe appeal, an agreement was entered into which rendered the proceeding before the referee applicable to all of the 38 other claimants. The OES' denial of benefits was affirmed as to both Thorpe and Covey by separate referees at separate hearings. The referees determined that the SWB payments constituted remuneration within the meaning of Sections 404(d)(1) and 4(u) of the Law and, therefore, were properly offset against claimants' entitlement to unemployment compensation for the week at issue. With respect to claimant Covey, Referee Dupak determined that he could not be considered unemployed within the meaning of Sections 401 and 4(u) of the Law because his combined actual earnings of $86.00 and SWB of $346.16, or $432.16, was greater than his weekly benefit rate of $266.00 plus his partial benefit credit of $107.00. Similarly, with respect to claimant Thorpe, Referee Stonage determined that because his actual earnings of $107.28 and his SWB of $392.42, or $499.70, was greater than his weekly benefit rate of $266.00 plus his partial benefit credit of $107.00, he too was ineligible for benefits.

Claimants filed separate appeals from the referees' decisions to the Board. The Board reversed the referees' decisions and granted benefits in the Thorpe appeal on

October 19, 1989 and in the Covey appeal on November 2, 1989. The Board concluded that the SWB payments were not remuneration within the meaning of the Law and that only claimants' actual earnings for work performed could be properly offset in calculating entitlement to benefits.

Employer filed one Petition for Review of both decisions to this Court on November 20, 1989. An order was issued on December 11, 1989 stating that the joint filing was inappropriate and that this Court would consider the petition an appeal of the referee's decision as to Thorpe. Employer was directed to file a separate Petition for Review of the referee's decision as to Covey. Separate petitions were filed and because both appeals involve the same question of law, a motion to consolidate was granted on February 20, 1990.

The sole issue employer presents for this Court's review is whether the SWB payments received by claimants are "remuneration" for purposes of determining claimants' status as unemployed within the definition of Section 4(u) of the Law.[2]

Section 4(u) of the Law defines unemployed as follows: An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

43 P.S. § 753(u). The term remuneration is not defined anywhere in the law. However, Section 4(x) of the Law[3] defines "wages" as "all remuneration ... paid by an em-

---

2. Our review is limited to determining whether findings of fact are supported by substantial evidence, whether constitutional rights have been violated, or whether an error of law was committed. *Emery Worldwide v. Unemployment Compensation Board of Review,* 115 Pa.Commonwealth Ct. 554, 540 A.2d 988 (1988).

3. 43 P.S. § 753(x).

ployer to an individual with respect to his employment...."
Section 4(*l*)(1) of the Law [4] defines "employment" as "all
personal service performed for remuneration by an individu-
al under any contract of hire...." Although not defined in
the Law, remuneration is defined in case law as payment
for services performed. *Gianfelice Unemployment Com-
pensation Case*, 396 Pa. 545, 153 A.2d 906 (1959); *Depart-
ment of Corrections, State Correctional Institution at
Graterford v. Unemployment Compensation Board of
Review*, 119 Pa.Commonwealth Ct. 296, 547 A.2d 470 (1988);
*Hargenrader v. Unemployment Compensation Board of
Review*, 99 Pa.Commonwealth Ct. 626, 513 A.2d 1135 (1986);
*Whitling v. Unemployment Compensation Board of Re-
view*, 95 Pa.Commonwealth Ct. 500, 505 A.2d 1101 (1986),
*petition for allowance of appeal denied*, 514 Pa. 640, 523
A.2d 346 (1987).

The Board relied upon this Court's decision in *Hargen-
rader* in concluding that the SWB paid to claimants were
not remuneration because they were not attributable to any
work performed during that week and, therefore, cannot be
used to disqualify claimants from receiving unemployment
compensation benefits. Therein, this Court was asked to
determine whether payments received by an employee from
a Supplemental Unemployment Benefit Plan, established by
the employer pursuant to a collective bargaining agree-
ment,[5] were wages within the meaning of Section 4(x) of the
Law and, therefore, properly includible in the total of the
claimant's base year wages for purposes of determining the
claimant's eligibility for extended unemployment compensa-
tion benefits. We concluded that the payments were not
wages as defined by Section 4(x) of the Law, 43 P.S.
§ 753(x) because "the payments were not, under the law,
remuneration for services."

**4.** 43 P.S. § 753(*l*)(1).

**5.** The Supplemental Unemployment Benefit Plan in *Hargenrader* is
described as a plan paying "benefits to workers during layoffs *and
during weeks in which they worked fewer than 32 hours.*" *Id.*, 99
Pa.Commonwealth Ct. at 627, 513 A.2d at 1136 (emphasis added).

Employer argues that the *Hargenrader* case is inapposite and that the Board's reliance thereon was error because that case dealt with SUB payments and not SWB payments. Employer draws a sharp distinction between SUB and SWB and maintains that because an employee must have worked for some portion of the week [6] in order to be eligible for the SWB, that the SWB must be deemed remuneration for purposes of determining unemployed status under Section 4(u)(II) of the Law. We are unpersuaded by employer's reasoning. Although the term "Short Week Benefit" is not specified in *Hargenrader*, the SUB Plan description includes such a benefit. (See Footnote 5 herein.)

Although this Court has not previously addressed the narrow question of whether SWB payments constitute remuneration under the Law, conceptually, SUB payments are the same as SWB payments. Both are designed to provide compensation to employees who are without work through no fault of their own. Furthermore, the Plan contains in its Foreward on Page 1 the following statement of purpose: "This plan is intended to supplement state system unemployment benefits, and not to replace or duplicate them, and to provide other benefits related to unemployment." This statement contains no distinction between SUB and SWB. Further, the Plan contains similar provisions for both SUB and SWB for deductions from the calculation of benefits of state unemployment benefits. Section 1.3(a), pertaining to SUB, provides: "For a week for

---

**6.** During the hearing before the referee, the following testimony was elicited in an attempt to define a short work week:

QR: What is a short work week? You have to work how many hours?
ACU: The company has to pay you 32 hours a week if you are working that week.

. . . . .

QR: You must pay 32 hours if you work at all during that week?
ACU: Right.
QR: It doesn't matter how much you work?
ACU: Right.
QR: One hour?
ACU: One hour.
(Notes of Testimony P. 6.).

which the employee receives a state unemployment benefit, there is deducted from the amount determined under 1.0 the maximum amount of state unemployment benefit...." Section 4.7 of the Plan, pertaining to SWB, provides:

> If the employee applies for a state unemployment benefit for any portion of the week [in which he is eligible for a SWB], he must notify the Company of such application and of the total amount of any such benefit received. *One-seventh of the amount of such state unemployment benefit will be deducted from the amount calculated in accordance with 4.3* [7] *for each day of the state benefit week* which falls within the payroll week for which the Short Week Benefit is paid. (Emphasis added.) [8]

Both the SUB and SWB Plan provisions begin with a gross calculation of benefits for the week subject to deductions for, inter alia, state unemployment benefits. Furthermore, Section 7.7 (Effect on Other Rights) of the Plan states in part:

> When an employee receives Benefits under the Plan he shall not by reason thereof be deemed to be working for the Company during such period, nor shall he by reason thereof receive benefits under any other benefit plan to which the Company contributes other than those to which he would be entitled if he were not receiving Benefits.

7. Section 4.3 of the Plan provides:
   A Short Week Benefit for a particular week will be calculated by multiplying the employee's standard hourly wage rate (the wage rate applicable to hours worked on a nonincentive job) by the excess of 32 hours over the sum of the hours:
   a. He worked in the week,
   b. He did not work but for which he was paid by the Company (excluding the first eight hours for which he received pay for unworked Holidays in any week),
   c. He did not work for reasons other than lack of work, and
   d. He did not work for the reasons specified in 3.5a., b., or c.

8. Obviously, this language does not provide for a dollar for dollar reimbursement. Therefore, it is reasonable to conclude that employer anticipated that an employee eligible for receiving SWB would retain some portion of any awarded state unemployment benefits in addition thereto.

In the Definitions Section on page 6 of the Plan, 'Benefit' is defined as follows: "Unless qualified in the text, a Weekly Benefit [SUB], Short Week Benefit or relocation allowance." We believe that *Hargenrader* controls the instant controversy. Further, our review of the existing authority lends support to this conclusion.

In *Karamanian v. Unemployment Compensation Board of Review*, 46 Pa.Commonwealth Ct. 163, 405 A.2d 1364 (1979), we held that an employer's provision of salary continuation payments made on account of a claimant's disability did not constitute wages under Section 4(x) of the Law because the payments were not made in consideration of personal service. Later, we held that even though a claimant's SUB pay was a benefit of his employment, the disallowed funds in *Karamanian* also would not have been paid but for the existence of an employer-employee relationship and furthermore that such payments were not made in consideration for personal services. *Whitling.*

In the *Graterford* case, the claimant was granted a leave of absence with pay beginning August 17, 1986 and ending November 23, 1986, at which time he was placed on leave without pay after exhausting all of his accumulated leave. The referee found that the claimant became unemployed as of August 17, 1986, and not as employer argued, November 23, 1986, on the basis that although claimant was receiving pay after August 17, it was not for services performed. The Court upheld the referee's determination citing *Pennsylvania Electric Company v. Unemployment Compensation Board of Review*, 73 Pa.Commonwealth Ct. 258, 458 A.2d 626 (1983), in support thereof. Therein, the employer, unable to provide the pregnant claimant with suitable work, placed her on sick leave. Subsequently, the claimant applied for unemployment compensation benefits which were granted by the referee and affirmed by the Board. The employer on appeal argued that the claimant could not be considered unemployed because it continued to pay to her holiday, vacation and sick pay, because she retained the right to return to work with no loss in seniority and because

it continued to pay insurance premiums on her behalf. We held that benefits could not be denied to the claimant on the basis that she was not unemployed, concluding that insurance premiums paid by the employer to the insurance company, as well as holiday, vacation and sick pay to the claimant are not remuneration within the meaning of Section 4(u) of the Law because they were based upon accumulated past and not present services. *See also Beistle Company v. Unemployment Compensation Board of Review,* 73 Pa.Commonwealth Ct. 205, 457 A.2d 1029 (1983) (although bonuses were received during weeks in which the claimant sought compensation benefits, we held they were properly excluded from calculations which determined the claimant's eligibility for partial unemployment benefits because they were not paid *with respect to* those weeks but were with respect to prior production periods).

It is clear that herein an employee must have worked fewer than 32 hours in a given week to establish eligibility to receive SWB and that SUB are paid for weeks in which no work is performed. However, it is equally clear that neither SWB nor SUB are in payment for services performed. We conclude the fact that SUB and SWB have this different eligibility requirement is a distinction without a difference because money paid out as either SUB or SWB is not money paid for services performed.

Employer next argues that the public policy of the Unemployment Compensation Law, that of alleviation of economic distress associated with involuntary unemployment,[9] is not furthered by allowing unemployment compensation eligibility when claimants are obtaining SWB in excess of unemployment compensation benefits. If the SWB are sufficient to offset the dire consequences of unemployment as anticipated by the legislature, then allowing unemployment compensation eligibility only leads to the potential of a double recovery, a clear abuse of the system. Employer characterizes Section 4.7 of the Plan as a "recoupment scheme" and argues that this scheme disrupts the fiscal responsibility of

9. Section 3 of the Law, 43 P.S. § 752.

the unemployment compensation fund because two payments are made to the employee, a SWB payment and an unemployment compensation payment, the responsibility for reimbursement [10] of which falls upon the employee. Employer maintains that in addition to the increased administration costs under such a scheme, that in effect, the recoupment plan places the unemployment compensation fund in the position of funding the trust fund which pays the SWB.[11]

This argument has no merit. It is well settled that any agreement by an employee to waive, release or commute his rights to compensation under the Law is rendered invalid by Section 701 of the Law, 43 P.S. § 861. *Gianfelice.* Employer is asking this Court to rewrite the terms of an agreement negotiated between management and labor that employer presumably freely entered into and now perceives as disadvantageous. The Plan, as agreed to by the parties, was clearly intended to provide SWB coverage to qualifying employees regardless of whether those employees are also eligible for state unemployment compensation benefits. To conclude otherwise, would be to disregard the plain language of the Plan. According to the Plan and the philosophy, as expressed in its Foreward, the contracting parties never intended that claimants, in receiving benefits thereunder, would be accepting them as wages as employer contends.

The Plan is a product of the bargaining process and provides a fringe benefit through the terms of which an employee and his family are insured against a substantial portion of an economic loss occasioned by unemployment. The performance of the Plan's terms results in the supple-

---

**10.** Although employer uses the term "reimbursement," the net effect of Section 4.7 is a reduction in the amount of SWB employer would be obligated to pay to an employee, were he or she not eligible for state unemployment benefits.

**11.** We wish to emphasize here that under Section 4.7 of the Plan, it is employer that is reimbursed. Thereby, any alleged additional administrative costs associated with the Plan, as well as employer's contributions to the unemployment compensation fund are defrayed.

mentation of state benefits, and it neither serves to defeat the interests of the state nor to undermine the philosophy and purposes of the Law. Thus, we will not disturb its terms. Further, any inefficiencies and additional administrative costs as a result of administration of the Plan are employer's burden, not the state's.

Having concluded that SWB payments are not remuneration within the meaning of the Law and, therefore, cannot be offset in calculating claimants' entitlement to benefits, the orders of the Board are affirmed.

## ORDER

AND NOW, this 24th day of May, 1991, the orders of the Unemployment Compensation Board of Review in the above-captioned matter are affirmed.

PALLADINO, Judge, dissenting.

I respectfully dissent. I believe that the majority fails to recognize the plain distinction between Supplemental Unemployment Benefits and Short Week Benefits and adopts an overly restrictive definition of the term remuneration contrary to the purpose of the Unemployment Compensation Law [1] (Law).

The employees in this case worked less than 32 hours during a given work week but were paid as though they had worked for 32 hours because of a Short Week Benefits (SWB) plan established through a collective bargaining agreement. The majority concludes that the SWB are not remuneration under the Law and therefore cannot be utilized to determine the employees' weekly wage. If, on the other hand, the SWB are held to be remuneration under the Law, then the employees' weekly wages exceed the weekly benefit rate, thus making these employees ineligible for benefits. I believe the latter result is the correct one to reach.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 801, 753(u) and 804(d)(1).

I respectfully suggest that the focus of the majority in detailing the terms of the collective bargaining agreement is misdirected. The only relevant inquiry is whether the employees were employed under the Law. The intention of the parties to the collective bargaining agreement and their apparent attempt to circumvent the provisions of the Law are irrelevant. An examination of the Law reveals that employed persons are not intended beneficiaries of the unemployment compensation system.

Section 4(u) of the Law defines unemployed in pertinent part as follows:

An individual shall be deemed unemployed ... (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit....

The term remuneration is not defined in the Law. In keeping with the remedial purposes of the Law which are to relieve the economic burdens of temporary unemployment while an individual is seeking other suitable employment, the term remuneration should not be strictly construed. *Unemployment Compensation Board of Review v. Miedama,* 27 Pa.Commonwealth Ct. 207, 365 A.2d 900 (1976). This court has defined remuneration as payment for services performed. *Department of Corrections, State Correctional Institution at Graterford v. Unemployment Compensation Board of Review,* 119 Pa.Commonwealth Ct. 296, 547 A.2d 470 (1988).

Eligibility for SWB is set forth in the Supplemental Unemployment Benefits Plan in pertinent part as follows: "An employee ... will receive a Short Week Benefit for any week in which some, but less than 32, hours are worked for the Company."

A clear requirement for SWB is the performance of a minimum of one hour of work during a work week. The requirement that work be performed before short week benefits are dispensed distinguishes the SWB in this case from the supplemental unemployment benefits involved in

*Hargenrader v. Unemployment Compensation Board of Review,* 99 Pa.Commonwealth Ct. 626, 513 A.2d 1135 (1986), upon which the majority relies.

In *Hargenrader,* this Court held that payments received by an employee under a supplemental unemployment compensation plan were not remuneration for services because the employee performed no services. Because the performance of some work is a prerequisite to obtaining SWB in the case before us, it seems clear that the payment of the benefits is in exchange for the services performed during that week. Therefore, I would hold that SWB are remuneration under the Law.

This interpretation is consistent with the policy of the Law which is set forth in section 752 in pertinent part as follows:

> ... Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own.... The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

The plain fact is that the employees in this case have not suffered from the crushing force of indigency which can be caused by involuntary unemployment.

Accordingly, I would reverse.

SMITH, J., joins in this dissent.