**Joseph BUCCERI, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (FREIGHTCAR AMERICA CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 11, 2011.

Decided Nov. 22, 2011.

Julie Wieczorek Fritsch, Pittsburgh, for petitioner.

Ronald M. Puntil, Pittsburgh, for respondent Freightcar America Corporation.

Douglas A. Williams, Pittsburgh, for amicus curiae Pennsylvania Association for Justice.

Stephen F. Moore, Harrisburg, for amicus curiae the Pennsylvania Defense Institute.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge McCULLOUGH.

Joseph Bucceri (Claimant) petitions for review of the September 3, 2010, order of the Workers' Compensation Appeal Board (Board) which reversed the March 31, 2009, decision of a Workers' Compensation Judge (WCJ) granting Claimant's petition to review compensation benefits under the provisions of the Pennsylvania Workers' Compensation Act (Act).[1] We now affirm in part and reverse and remand in part.

On June 4, 2002, Claimant sustained a work-related injury to his left knee while in the course and scope of his employment with Freightcar America Corporation (Employer). Disability benefits were calculated under section 309 of the Act, 77 P.S. § 582,[2] and set at a rate of $287.42

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4, 2501—2708.

2. Section 309 of the Act provides:

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

The terms "average weekly wage" and "total wages" as used in this section ... shall not include ... fringe benefits, including, but not limited to, employer payments for or contributions to a retirement, pension, health and welfare, life insurance, social security or any other plan for the benefit of the employe or his dependents....

per week based upon an average weekly wage (AWW) of $319.36 per week. (Finding of Fact No. 1.)

On November 16, 2007, Claimant filed a review petition alleging that his compensation benefits had been incorrectly calculated under a supplemental agreement dated August 9, 2007, based upon an incorrect AWW. That same day, Claimant filed a penalty petition in which he alleged that Employer had failed to pay the correct amount of benefits. Employer filed answers to both petitions denying all of the material allegations raised therein. The petitions were consolidated and the case was assigned to a WCJ for hearings. (Findings of Fact Nos. 2, 3.)

During the proceedings, the parties informed the WCJ that the primary issue was whether supplemental unemployment benefits (SUB) and unemployment compensation (UC) benefits received by Claimant during a period of layoff prior to his work-related injury should be included in the calculation of his AWW. (Finding of Fact No. 4.)

Claimant testified that he worked for Employer for approximately 29 years, that he was laid off in March of 2007, and that he was receiving disability benefits since that time. Claimant had been laid off numerous times while employed by Employer, during which he received SUB payments and UC benefits. The SUB payments were paid by Employer as a benefit negotiated through a collective bargaining agreement (CBA).[3] The SUB payments

---

*Id.*

As this Court has recently noted:

Sections 309(a), (b) and (c) provide the method for calculating AWW where the wages are fixed by the week, month, and year, respectively. 77 P.S. § 582(a)-(c). When wages are not fixed by the week, month or year, the AWW is calculated under either Section 309(d), (d.1), (d.2), or (e). 77 P.S. § 582(d)-(e). Section 309(d.1) applies when the claimant has been employed for less than three consecutive thirteen-week periods in the 52 weeks preceding the injury. 77 P.S. § 582(d.1). Section 309(d.2) applies when the employee has not worked a complete period of thirteen weeks. 77 P.S. § 582(d.2). Section 309(e) applies to purely seasonal employees, and to concurrent employment situations involving more than one employer. 77 P.S. § 582(e).

*Lenzi v. Workers' Compensation Appeal Board (Victor Paving),* 29 A.3d 891, 894 n. 8 (Pa.Cmwlth.2011).

3. With respect to the payment of SUB benefits, Article XX of the CBA provided, in pertinent part:

**Section 2. Coverage and Payment Procedures**

(a) [Employer] will pay any Employee with five (5) or more years of pension service at the time of layoff, $100 for each "wait-

ing week" before state unemployment begins.

(b) SUB payments beyond the "waiting week" will be available to employees with between ten (10) and sixteen (16) years of pension service at the time of layoff as follows:

**If the laid off Employee is receiving a State Unemployment check:**

[Employer] will pay $25 per week, to each "eligible" employee, for each week that the employee is on layoff, to a cumulative maximum of twenty-six (26) weeks.

**If the laid off Employee is not receiving a state unemployment check:**

[Employer] will pay $25 per week to each "eligible" employee for each week that the employee is on layoff, to an additional cumulative maximum of twenty-six (26) weeks at $25 per week, provided that the employee has used his first full twenty-six (26) weeks at $25 while receiving State Unemployment.

The employee will be limited to a total cumulative number of SUB weeks of fifty-two (52) at $25 per week. Once these cumulative weeks have been used, the employee will not be eligible for any SUB payments until he reaches sixteen (16) years of pension service. At that time, any unused weeks will be eliminated and the employee will begin eligibility under the rules listed below.

were treated as income upon which he paid taxes. Claimant presented documentary evidence regarding the wages that he earned, and UC benefits that he received, for periods prior to his work-related injury. (Findings of Fact Nos. 5, 6.)

Employer's human resources manager, Charles Howard, testified for Employer in opposition to Claimant's petition. Howard testified that, as a part of the CBA in effect between November 1, 1997, through October 31, 2001, Claimant received SUB payments during the periods that he was laid off. Howard stated that the amount of SUB payments paid to employees was based upon seniority, and that the payments were taxable for federal income tax purposes, but not taxable for Social Security purposes. Employer also presented documentary evidence regarding the SUB payments made to Claimant prior to the work-related injury and the CBA under which the SUB payments were made. (Findings of Fact Nos. 7, 8.)

The WCJ accepted as credible the testimony of Claimant and Howard regarding Claimant's receipt of SUB payments and UC benefits during the period that he was laid off prior to his work-related injury. The WCJ also accepted as credible Howard's testimony regarding the manner in which SUB payments were accrued by Claimant under the CBA. The WCJ also found that Claimant's SUB payments and UC benefits were subject to federal income tax. (Finding of Fact No. 9.)

> (c) SUB payments beyond the "waiting week" will be available to employees with sixteen (16) or more years of pension service at the time of layoff as follows:
> **If the laid off Employee is receiving a State Unemployment check:**
> [Employer] will pay $25 per week, to each "eligible" employee, for each week that the employee is on layoff, to a cumulative maximum of twenty-six (26) weeks.
> **If the laid off Employee is not receiving a state unemployment check:**
> [Employer] will pay $225 per week to each "eligible" employee for each week that the employee is on layoff, to an additional cumulative maximum of seventy-eight (78) weeks at $225 per week, provided that the employee has used his full twenty-six (26) weeks at $25.
> The employee will be limited to a total cumulative number of SUB weeks of one hundred four (104), (26 at $25 per week and 78 at $225 per week). Once these cumulative weeks have been used, the employee will not be eligible for any SUB payments.
> Any unused SUB weeks that the employee has at the time of retirement will be paid at a rate of $12.50 per week. (Example: An employee who has used a cumulative total of 34 weeks between his sixteenth year and his retirement would have 70 unused weeks (104 minus 34). At the time of retirement this employee
>
> will receive a check for $875 (70 unused weeks times $12.50 per week).
> In the event of a shutdown, eligible employees will receive any unused credits to a maximum of one hundred four (104) weeks. . . .
> **Section 3. Short Week Benefits**
> Employees with sixteen (16) or more years of pension service will be paid a short work week benefits calculated as follows:
> All hours scheduled to work in the week
> All hours scheduled as vacation in the week
> Only one holiday will be counted in a scheduling week
> All hours reported as workers' compensation hours in the week
> All hours of funeral leave in the week
> All hours of jury or witness service in the week
> All hours reported as Union Business in the week
> The total of all hours shown above will be added for the week and deducted from a 32 hour beginning base. The net hours resulting from this calculation will be multiplied by $14.00 to determine the "Eligible" employee's short work week payment.
> Each short week benefit check as calculated above will be counted as one (1) used week of the 104 weeks referred to in Section 2(c) above.
> Reproduced Record (RR) at 224a–26a.

The WCJ noted that in *Occidental Chemical Company v. Workers' Compensation Appeal Board (Knight)*, 756 A.2d 152 (Pa.Cmwlth.2000), this Court determined that SUB payments under a CBA were in the nature of wages earned and were not intended to be in lieu of compensation and held that an employer was not entitled to a credit for such payments. The WCJ also noted that in *Shire v. Workers' Compensation Appeal Board (General Motors)*, 828 A.2d 441 (Pa.Cmwlth.), *appeal denied*, 577 Pa. 675, 842 A.2d 408 (2003), this Court determined that sickness and accident benefits received through an employer-sponsored program are to be included in the calculation of a claimant's AWW under section 309 of the Act. (Finding of Fact No. 9.)

Based on the foregoing, the WCJ found that excluding the SUB payments and the UC benefits from the calculation of Claimant's AWW would result in an artificially low AWW. As a result, the WCJ included the SUB payments and the UC benefits and recalculated Claimant's AWW to be $562.21 per week. However, the WCJ also concluded that Claimant had failed to sustain his burden of proving that Employer violated the Act by failing to pay the correct amount of benefits. (Findings of Fact Nos. 9, 10.) Accordingly, the WCJ issued an order granting Claimant's review petition and denying his penalty petition.

■ Employer appealed to the Board, which reversed the WCJ's decision. The Board noted that in *Reifsnyder v. Workers' Compensation Appeal Board (Dana Corporation)*, 584 Pa. 341, 883 A.2d 537 (2005), the Supreme Court specifically determined that UC benefits were to be excluded from the calculation of AWW under section 309 of the Act. The Board also noted that because SUB payments are intended to be paid when an employee is no longer working for an employer, they are likewise to be excluded from the calculation of Claimant's AWW under section 309. Accordingly, the Board issued an order reversing the WCJ's decision and stating that Claimant's AWW was correctly calculated to be $319.36 per week. Claimant then filed the instant petition for review.[4]

■ In this appeal, Claimant contends that the Board erred in reversing the WCJ's decision granting his review petition. More specifically, Claimant asserts that both the UC benefits he received and the SUB payments made under the CBA should be included in the calculation of his AWW under section 309 of the Act.

■ Initially, we note that the purpose of calculating AWW under section 309 of the Act is to create a reasonable picture of a claimant's pre-injury earning history to use as a projection of potential future wages to determine the corresponding wage loss. *Lenzi*, 29 A.3d at 891, quoting *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 548, 746 A.2d 1108, 1112 (2000). Thus, the calculation is designed to focus on "the economic reality of a claimant's recent pre-injury earning experience." *Id.*

■ Moreover, in construing the provisions of section 309, we must keep in mind that the Act is remedial in nature and intended to benefit the worker and, therefore, it must be liberally construed to effectuate its humanitarian objectives. *Colpetzer v. Workers' Compensation Appeal*

---

4. This Court's scope of review is limited to determining whether findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214 (Pa. Cmwlth.2006). The determination of a claimant's AWW is a question of law and our review is plenary. *Lenzi.*

*Board (Standard Steel)*, 582 Pa. 295, 870 A.2d 875 (2005). Thus, borderline interpretations of section 309 must be construed in the injured party's favor. *Id.*

With respect to the UC benefits received by Claimant, it is now settled that such benefits are not included in the calculation of his AWW under section 309. *Reifsnyder; Lenzi.* In *Reifsnyder*, 584 Pa. at 359–360, 883 A.2d at 548, the court explained as follows:

> [T]he Act concerns itself with compensable work injuries and their effect upon earning capacity; a decline in a worker's earnings which results from business or economic forces is not the same as a decline in that worker's earning due to a job-related impairment. The Workers' Compensation system operates to insure a worker against the economic effects of a workplace injury, not against the economic effects of variations in the business cycle. Thus, inclusion of unemployment compensation benefits paid out during a work layoff is not required in order to ensure an accurate measure of a worker's earning history and earning capacity.

Accordingly, the Board did not err in reversing the WCJ's order in this respect.

∎ However, this Court has previously determined that SUB payments made to a claimant under a CBA are "in the nature of wages" in determining an employer's offset against workers' compensation liability under section 204(a) of the Act, 77 P.S. § 71(a),[5] if such payments are an entitlement accrued as a result of the claimant's services for the employer. *Dana Corporation v. Workers' Compensation Appeal Board (Beck)*, 782 A.2d 1111, 1114–15 (Pa. Cmwlth.2001), citing *Occidental Chemical Company*, 756 A.2d at 155. As this Court explained in *Occidental:*

> In determining whether Employer is entitled to a credit for the SUB payments made, this court must decide if the payments are in the nature of wages or if the payments are in lieu of compensation. If the SUB pay is an accrued entitlement which has been built up as a result of Claimant's services for Employer, Employer is not entitled to a credit for those payments. If, on the other hand, the SUB payments were made in relief of Claimant's inability to labor, Employer will be entitled to a credit. After reviewing the facts of this case, we conclude that the SUB payments are not in lieu of compensation and are in the nature of wages.

*Id.* (citations omitted).

This Court also has previously held that sickness and accident benefits received as compensation for days missed from work are to be included in the calculation of a claimant's AWW. *Shire.* See also *Temple v. Pennsylvania Department of Highways*, 445 Pa. 539, 542–543, 285 A.2d 137, 139 (1971) (holding that an employer was not

---

5. Section 204(a) provides, in pertinent part, that "[i]f the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made...." *Id.* Likewise, section 123.6 of title 34 of the Pennsylvania Code provides, in pertinent part:

> (a) Workers' compensation benefits otherwise payable shall be offset by the net amount an employe receives in UC benefits subsequent to the work-related injury. This offset applies only to UC benefits which an employe receives and which are attributable to the same time period in which an employe also receives workers' compensation benefits.

> * * *

> (c) The offset to workers' compensation benefits for amounts received in UC benefits is triggered when an employe becomes eligible for and begins receiving the UC benefits....
> 34 Pa.Code § 123.6(a), (c).

entitled to a credit for sick leave payments because sick leave, like vacation pay, was a benefit provided under the work agreement and was an entitlement like wages for services performed). In addition, vacation and holiday pay are considered to be wages in calculating AWW under section 309(d) of the Act because they are entitlements earned through and exchanged for services performed for the employer. *Lane v. Workers' Compensation Appeal Board (Eljer Plumbing)*, 780 A.2d 801 (Pa. Cmwlth.2001); *Boro of Midland v. Workmen's Compensation Appeal Board (Granito)*, 127 Pa.Cmwlth.462, 561 A.2d 1332 (1989). In fact, vacation and holiday pay are properly included the calculation of a claimant's post injury "earning power" for partial disability benefits purposes under section 306(b) of the Act, 77 P.S. § 512(2).[6] *Lane.*

As noted above, section 309 of the Act specifically provides that the calculation of a claimant's AWW "[s]hall not include ... fringe benefits, including, but not limited to, employer payments for or contributions to a retirement, pension, health and welfare, life insurance, social security or any other plan for the benefit of the employe or his dependents...." 77 P.S. § 582.

Thus, "[t]he particular class of things listed includes benefit plans that generally are not added to an employee's weekly pay...." *Shire*, 828 A.2d at 445.

In contrast, the SUB payments Claimant received under the CBA were paid out weekly for each week that he was on layoff, to a cumulative maximum of 26 weeks if he was receiving UC benefits, or up to a cumulative maximum of either 52 or 78 weeks if he was not receiving UC benefits, based upon the number of years he worked for Employer. *See* RR at 224a–26a. Thus, it does not appear that the SUB payments "[a]re of the same class as those [fringe benefits] specifically enumerated [in Section 309 of the Act] ...," *Shire*, 828 A.2d at 445, but, instead, that they "[a]re entitlements earned through and exchanged for services performed for the employer." *Lane*, 780 A.2d at 804.[7]

Moreover, the exclusion of the SUB payments Claimant received artificially deflated the calculation of his AWW under section 309 based upon an inaccurate measure of his earning history and earning capacity. As the court explained in *Colpetzer*, 582 Pa. at 313, 870 A.2d at 886:

---

**6.** Specifically, Section 306(b)(2) provides, in pertinent part:

"[E]arning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth....
77 P.S. § 512(2).

**7.** *But cf. Allegheny Ludlum Corporation v. Unemployment Compensation Board of Re-*

*view*, 535 Pa. 125, 634 A.2d 587 (1993) (holding that although short week benefits are considered to be "remuneration" for services performed under section 4(u) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 753(u), SUB payments are not considered as such citing *Hargenrader v. Unemployment Compensation Board of Review*, 99 Pa.Cmwlth. 626, 513 A.2d 1135 (1986)); *Whitling v. Unemployment Compensation Board of Review*, 95 Pa.Cmwlth. 500, 505 A.2d 1101 (1986) (holding that SUB payments could not be used in determining a claimant's qualifying base year wages under sections 4(a), (b), (*l* ), (1), and (x) of the Law, 43 P.S. § 753(a), (b), (*l* ), (1), (x)).

[I]t is not an accurate measure of economic reality to treat periods where no wages were earned solely because the worker was unfortunate enough to have suffered a previous work injury, as if the worker had no earning capacity for those periods. Such an approach would severely underestimate the reality of the worker's typical earnings, punish the worker for no reason approved in the legislation, and contradict the overriding legislative goal of accuracy in calculation [of the AWW].

Thus, we conclude that the SUB payments received by Claimant should have been included in the calculation of his AWW under section 309 of the Act, and the Board erred in holding otherwise.

Based on the foregoing, we affirm the Board's decision with respect to the exclusion of the UC benefits Claimant received from the calculation of his AWW. However, we reverse the Board's decision with respect to the SUB payments Claimant received pursuant to the CBA which we hold are properly included in the calculation of his AWW. As a result, this matter will be remanded to the Board for further remand to the WCJ to recalculate Claimant's AWW by including the SUB payments that Claimant received.

Accordingly, the order of the Board is affirmed in part and reversed and remanded in part.

## ORDER

AND NOW, this 22nd day of November, 2011, the September 3, 2010, order of the Workers' Compensation Appeal Board (Board), to the extent that it reversed the decision of the workers' compensation judge (WCJ) including the unemployment compensation benefits received by Joseph Bucceri (Claimant) in the calculation of his average weekly wage (AWW), is affirmed. However, the order of the Board, to the extent that it reversed the WCJ's decision including the supplemental unemployment benefit payments received by Claimant in the calculation of his AWW, is reversed. The matter is remanded to the Board, with specific instructions to remand to the WCJ, for the calculation of Claimant's AWW consistent with this opinion.

Jurisdiction relinquished.